[No. B153856. Second Dist., Div. Seven. Aug. 5, 2002.]

SWAT-FAME, INC., Plaintiff and Appellant, v.
LESLIE J. GOLDSTEIN et al., Defendants and Respondents.

## COUNSEL

Law Offices of Gary Freedman, Gary Freedman and Emily F. Bresler for Plaintiff and Appellant.

Gelfand Rappaport & Glaser and Steven Glaser for Defendant and Respondent Leslie J. Goldstein.

Charlston, Revich, Chamberlin & Williams and Robert W. Keaster for Defendants and Respondents Posner & Rosen, Howard Rosen and Lawrence Posner.

## OPINION

**PERLUSS, J.**—Leslie J. Goldstein, represented by the law firm of Posner & Rosen LLP and lawyers Howard Rosen and Lawrence Posner,[1] sued Swat-Fame, Inc., for fraudulent inducement to enter into an employment contract and other claims arising out of her employment as a Swat-Fame sales representative. At her deposition, Goldstein admitted certain representations by Swat-Fame, although alleged in her complaint to be false, were in fact true at the time they were made. Swat-Fame thereafter obtained summary adjudication on the fraud claim, and Goldstein unilaterally dismissed the rest of her complaint with prejudice.

Swat-Fame then filed a malicious prosecution against Goldstein and the lawyers, alleging they brought the fraud claim without probable cause and with malice. The trial court granted summary judgment in favor of the defendants, finding that no triable issues of fact existed and the defendants had established probable cause for filing the fraud claim as a matter of law.

We affirm the judgment in favor of the lawyers because the undisputed facts establish they based the fraud claim on information provided by Goldstein, they were entitled to rely on the information provided, and probable cause supported a claim for fraud based on that information. However, we reverse the judgment in favor of Goldstein because triable issues of fact exist as to whether she acted with probable cause and without malice or in good faith on the advice of counsel.

### FACTUAL AND PROCEDURAL BACKGROUND

Goldstein was employed as a salesperson by Back to Back Kidsware, Inc. (Back to Back), a clothing manufacturer, from 1992 to October 1997. She developed a business relationship with Target Stores and, during her last year of employment at Back to Back, was responsible for $10 million in merchandise orders from Target. In October 1997 Swat-Fame, another apparel manufacturer, approached Goldstein about coming to work for Swat-Fame and bringing her Target business with her. Goldstein had discussions with Swat-Fame officers Lowell Sharron, Mitchell Quaranta and Bruce Stern, who made the following representations to her:

"[Swat-Fame is] a great company"

"People are here for a really long time"

---

[1] Unless otherwise indicated, appellants Posner & Rosen, Howard Rosen and Lawrence Posner are hereinafter collectively referred to as the "lawyers."

"We take care of the people that work for us"

"We really want to do business with Target"

"You have the relationships with Target."

During her preemployment discussions with Swat-Fame, Goldstein stated she expected to bring in $7 million to $8 million in Target business and asked whether Swat-Fame was "big enough to handle the production demands of Target." Swat-Fame responded that "we are a $100 million company and we can handle [Target's production demands]." Based on Swat-Fame's assurances, Goldstein agreed to go to work for Swat-Fame and bring her Target business with her.

According to Goldstein, Swat-Fame soon proved unable to meet Target's scheduling and quality control requirements. In January 1999 Goldstein and Sharron, Swat-Fame's sales manager, met with Target representatives at Target's headquarters in Minneapolis, where they were informed that Target would no longer purchase Goldstein's line of clothing from Swat-Fame. The reason given by Target is disputed: Goldstein testified Target said it had lost confidence in Swat-Fame's ability to handle Target's production requirements. Sharron, however, testified that Target never stated it had lost confidence in Swat-Fame, but instead explained its buyers were under pressure to buy from divisions of its parent company rather than from outside vendors. Target did not place any orders with Goldstein after January 1999, although it did continue to place orders for other Swat-Fame clothing lines. In April 1999 Swat-Fame terminated Goldstein's employment. She did not thereafter obtain a sales position with another apparel manufacturer.

Goldstein retained the law firm of Posner & Rosen, based on her understanding they were employment law specialists. At her first meeting with Howard Rosen, she told him about the statements made by Swat-Fame at the time she was hired. She also told Rosen that Swat-Fame was not able to handle the Target production, that Target had stopped purchasing from Swat-Fame because it had lost confidence in Swat-Fame's ability to meet Target's production requirements, that Swat-Fame had failed to meet scheduled Target delivery dates and that there were quality problems with the garments manufactured by Swat-Fame. She also advised him that her reputation and credibility in the industry had been damaged as a result of Swat-Fame's problems with Target. At Rosen's request, Goldstein wrote down the statements that had induced her to go to work for the company and sent the information to Rosen in a memorandum. The memorandum also stated that Goldstein went to work for Swat-Fame because "[i]t was important for me to take my Target business which I had built for the last 10 years

to a company that was big enough to handle the production demands of Target."

Rosen told Goldstein he believed she had a viable claim for fraud in the inducement of an employment contract. The lawyers sent a demand letter to Bruce Stern at Swat-Fame in which they set out the factual and legal basis for Goldstein's claims and demanded payment of $450,000, consisting of $122,000 in commissions and the balance as damages for fraudulent inducement.

Swat-Fame's counsel responded to Rosen's letter with a cursory reply stating, in part, "You are substantially misinformed regarding the facts. For example, you quote language which is not even contained in the written contract between the parties. [¶] In any event, based on the parties' contract and without waiting to receive and determine the returns, markdowns and allowances which serve to reduce Ms. Goldstein's compensation, and without pursuing Ms. Goldstein for her misrepresentations and breaches, there would be due $47,917.37. Enclosed is a check in that amount. It is tendered in full satisfaction of any and all claims by Ms. Goldstein."[2]

The lawyers filed suit on Goldstein's behalf on July 29, 1999. The original complaint alleged claims for fraud in the inducement of employment, breach of contract for failure to pay commissions due,[3] refusal to pay wages, conversion, breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing.[4] The fraudulent inducement claim was based on the representations made by Sharron, Quaranta and Stern during their pre-employment discussions with Goldstein.

Swat-Fame's counsel took Goldstein's deposition on September 28, 1999. At her deposition, Goldstein made several significant admissions including the following:

—Swat-Fame was in fact a $100 million company when it hired her, and she had no reason to believe otherwise.

—She knew people stayed at Swat-Fame for a long time.

---

[2]Goldstein refused to accept the check in satisfaction of her claims. However, shortly after her initial complaint was filed, she apparently accepted a check for $47,917.37 representing the undisputed amount of commissions owed. Swat-Fame contends the check was for more than the amount of commissions actually due because it did not deduct returns, discounts and allowances, as it was entitled to do under Goldstein's employment agreement.

[3]Although Goldstein's employment agreement provided for payment of commissions on orders actually shipped, the commission claim in the complaint was calculated based on orders she had "booked," whether or not they were actually shipped.

[4]The original complaint does not appear to be part of the record on appeal.

—She did have a relationship with Target and she could bring Target's business to Swat-Fame.

—She told Swat-Fame she expected to bring in $7 million to $8 million in business from Target.

—Swat-Fame representatives were telling the truth when they told her they could handle $7 million to $8 million in business because their sales volume was over $100 million.

—At the time of her deposition, she did not have any reason to believe that Swat-Fame personnel were not sincere when they said they could handle the Target business.

Despite these admissions, Goldstein testified that she never told her lawyers that anything alleged in the complaint was untrue.

Swat-Fame demurred to the original complaint on October 1, 1999. Goldstein responded by filing an amended complaint, which eliminated the claims for conversion and breach of fiduciary duty. Swat-Fame demurred to the fraud claim in the first amended complaint, apparently on the ground the statements alleged were nonactionable statements of opinion.[5] The demurrer was overruled, evidently because the trial court found the representation that Swat-Fame was a $100 million company to be a statement of fact.

In May 2000 Swat-Fame moved for summary adjudication of Goldstein's fraud claim based on the admissions in her deposition. Goldstein did not dispute any of the facts proffered in support of the motion for summary adjudication, nor did she present any evidence in opposition to the motion. The trial court granted the motion, finding the only actionable statement of fact alleged in the complaint was the representation that Swat-Fame was a $100 million company. Because Goldstein admitted that statement was true when made, there were no triable issues of fact as to the claim for fraudulent inducement. Goldstein unilaterally dismissed her remaining claims with prejudice on August 7, 2000.

Swat-Fame sued Goldstein and the lawyers for malicious prosecution on September 15, 2000. After answering the complaint, Goldstein and the lawyers filed a motion to strike the complaint pursuant to Code of Civil

---

[5]Neither the demurrer itself nor the transcript of the hearing on the demurrer is part of the record on appeal. Our only source of information about the demurrer to the first amended complaint is the declaration of Swat-Fame's counsel filed in opposition to respondents' motions for summary judgment.

Procedure section 425.16 (the anti-SLAPP motion). The trial court denied the motion on December 4, 2000, finding that Swat-Fame had established a prima facie case for malicious prosecution against all defendants.

In June 2001 Goldstein and the lawyers filed motions for summary judgment. In their motion, which Goldstein joined, the lawyers argued the undisputed facts established the employment action was filed with probable cause and without malice. Goldstein filed a separate motion for summary judgment in which she argued she could not be liable for malicious prosecution because she had acted on the advice of counsel.

The summary judgment motions were heard by a different judge from the one who had heard the anti-SLAPP motion. The court granted both motions, finding no triable issues of material fact existed and holding the undisputed facts established Goldstein and the lawyers had probable cause to bring the fraud claim.[6] This appeal followed.

## DISCUSSION

1. *Standard of Review.*

■ The standard of review on appeal after an order granting summary judgment is well settled. "A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. (*Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 612 [76 Cal.Rptr.2d 479, 957 P.2d 1313].) In the trial court, once a moving defendant has 'shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established,' the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .' (Code Civ. Proc., § 437c, subd. (o)(2); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854-855 [107 Cal.Rptr.2d 841, 24 P.3d 493].)" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477 [110 Cal.Rptr.2d 370, 28 P.3d 116].)

In reviewing the evidence, we strictly construe the moving party's evidence and liberally construe the opposing party's and accept as undisputed

---

[6] The trial court prepared an extensive tentative ruling, which it adopted as its final ruling after argument.

only those portions of the moving party's evidence that are uncontradicted. "Only when the inferences are indisputable may the court decide the issues as a matter of law. If the evidence is in conflict, the factual issues must be resolved by trial. 'Any doubts about the propriety of summary judgment . . . are generally resolved *against* granting the motion, because that allows the future development of the case and avoids errors.' [Citation.]" *(Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832, 839 [89 Cal.Rptr.2d 540]; see also *Katz v. Chevron Corp.* (1994) 22 Cal.App.4th 1352, 1365 [27 Cal.Rptr.2d 681] ["doubts as to the propriety of granting the motion should be resolved in favor of the opposing party"].)

*2.  Because the Parties Did Not Obtain Rulings on Their Evidentiary Objections, We Consider All the Evidence Proffered by Both Parties.*

■  The parties filed written objections to portions of the evidence proffered in connection with the motion for summary judgment. In its tentative ruling on the motion, the trial court stated "in relation to the objections to declaratory evidence put forward by both sides, it is not necessary to rule on them. Instead, the court has considered only relevant and competent evidence in the face of the objections, and evidence which Plaintiffs have not disputed. *Biljac Associates v. First Interstate Bank* (1990) 218 Cal.App.3d 1410, 1419 [267 Cal.Rptr. 819]."

The trial court's response to the parties' objections, although sanctioned by Division Two of the Court of Appeal, First Appellate District in *Biljac Associates v. First Interstate Bank, supra,* 218 Cal.App.3d 1410, is in our view an unacceptable circumvention of the court's obligation to rule on the evidentiary objections presented. (*City of Long Beach v. Farmers & Merchants Bank* (2000) 81 Cal.App.4th 780, 784 [97 Cal.Rptr.2d 140] ["Trial courts have a duty to rule on evidentiary objections. Part of the judicial function in assessing the merits of a summary judgment or adjudication motion involves a determination as to what evidence is admissible and that which is not."]; see *Sambrano v. City of San Diego* (2001) 94 Cal.App.4th 225, 238 [114 Cal.Rptr.2d 151] [rejecting *Biljac* rule and observing "while *Biljac* is generally correct that 'it is presumed on appeal that a judge has not relied on irrelevant or incompetent evidence,' *Biljac* seems to allow the trial judge to arrogate to him—or herself the right to the benefit of this presumption, as a labor-saving device. Surely this is not the meaning of this rule of appellate practice. [Citation.]"].)

When, as here, the trial judge fails to rule on objections to evidence presented at a summary judgment motion, the objections are deemed waived on appeal. (*Sharon P. v. Arman Ltd.* (1999) 21 Cal.4th 1181, 1186, fn. 1 [91

Cal.Rptr.2d 35, 989 P.2d 121], disapproved on other grounds by *Aguilar v. Atlantic Richfield Co., supra,* 26 Cal.4th at p. 854, fn. 19; *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 670, fn. 1 [25 Cal.Rptr.2d 137, 863 P.2d 207].)[7] Accordingly, in reviewing the trial court's ruling, we consider all the evidence presented by the parties.[8]

3. *There Are No Triable Issues of Material Fact with Respect to the Lawyers; the Trial Court Properly Granted Summary Judgment in Their Favor.*

a. *Based on the Information Goldstein Provided to the Lawyers, the Fraud Claim Was Supported by Probable Cause.*

■ To establish a claim for malicious prosecution, a plaintiff must demonstrate the prior action was begun at the direction of the defendant, pursued to a legal termination in plaintiff's favor, brought without probable cause and initiated with malice. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871 [254 Cal.Rptr. 336, 765 P.2d 498] (*Sheldon Appel*).) The standard for determining the probable cause element is objective, not subjective. The trial court is called upon "to make an objective determination of the 'reasonableness' of the defendant's conduct, i.e., to determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable." (*Id.* at p. 878.) Whether a claim is legally tenable is tested by "whether any reasonable attorney would have thought the claim tenable . . . ." (*Id.* at p. 886.)

■ Whether the defendant had probable cause for instituting the prior action "has traditionally been viewed as a question of law to be determined by the court." (*Sheldon Appel, supra,* 47 Cal.3d at p. 875.) Determination of the presence or absence of probable cause depends on the "facts which the defendant knew when he instituted the prior action." (*Id.* at p. 884.) If the facts upon which the defendant acted are in dispute, those facts must be determined by the jury before the court can make its legal determination. (*Id.* at p. 877 ["' "What facts and circumstances amount to probable cause is a pure question of law. Whether they exist or not in any particular case is a pure question of fact. The former is exclusively for the court, the latter for the jury." ' [Citations.]"]; *Sangster v. Paetkau* (1998) 68 Cal.App.4th 151,

---

[7]The only exception to this rule is when counsel specifically requests a ruling on evidentiary objections and the trial court nonetheless declines to rule. (*City of Long Beach v. Farmers & Merchants Bank, supra,* 81 Cal.App.4th at p. 784.) There is nothing in the record before us to suggest this exception should apply.

[8]On the whole, the parties' objections appear to lack merit. In particular, we are unpersuaded by the argument that discovery disputes should limit the evidence available in connection with the motion for summary judgment.

165 [80 Cal.Rptr.2d 66] ["Evidentiary disputes and factual questions may require resolution before the trial court applies the objective standard to the issue of probable cause."].)

The trial court found the undisputed facts establish that the lawyers had probable cause to assert the fraudulent inducement claim. We agree. It is undisputed that the allegations in the complaint accurately reflected the facts as given to the lawyers by Goldstein and that she never told them those facts were incorrect. The information provided to the lawyers, if true, was sufficient to state a cause of action for fraudulent inducement of employment.[9]

i. *The legal tenability of the fraudulent inducement claim was established by the trial court's order overruling the demurrer to the first amended complaint.*

Swat-Fame contends the lawyers lacked probable cause to bring the fraud claim because they knew the "false representations" alleged in the complaint were only statements of opinion or a prediction of future events and could not state a claim for fraud. However, in overruling Swat-Fame's demurrer to the first amended complaint, the trial court concluded that a cause of action for fraud *was* stated based on the allegedly false statement that Swat-Fame was a $100 million company. It is undisputed that the allegations that Swat-Fame made this statement to Goldstein and that the statement was false were accurate to the best of the lawyers' knowledge.

As to the other statements, we cannot say that no reasonable lawyer would have thought they were arguably actionable statements of fact, rather than opinion, and thus sufficient to state a claim for fraud. (See *Hufstedler, Kaus & Ettinger v. Superior Court* (1996) 42 Cal.App.4th 55, 67 [49 Cal.Rptr.2d 551] ["distinction between a statement of fact and one of opinion is frequently difficult" and context of statements is important; therefore attorney did not lack probable cause to allege statements in defamation action were of fact, not opinion].) We also cannot say that the lawyers were not entitled to rely on Target's later termination of its relationship based on production problems (according to what Goldstein told the lawyers) as an indication that Swat-Fame's statement that it could handle Target's production was not true when made. Although Target's termination of the relationship, 16 months after the statements, might not alone support an inference that the statements were false when made, it does reasonably suggest that such evidence might come to light during discovery.

---

[9]Because we find the lawyers had probable cause to file the action for fraud, we need not reach the question of malice as to them. (*Sheldon Appel, supra,* 47 Cal.3d at p. 875 ["If the court determines that there was probable cause to institute the prior action, the malicious prosecution action fails, whether or not there is evidence that the prior suit was maliciously motivated. [Citations.]"].)

Because the allegations in the complaint were true to the best of the lawyers' knowledge at the time the complaint was filed, and because the trial court overruled Swat-Fame's demurrer to the fraud claim, the lawyers necessarily had probable cause to bring the claim for fraud. (See *Roberts v. Sentry Life Insurance* (1999) 76 Cal.App.4th 375, 384 [90 Cal.Rptr.2d 408] ["denial of defendant's summary judgment in an earlier case normally establishes there was probable cause to sue, thus barring a later malicious prosecution suit"].)

Swat-Fame also argues the lawyers lacked probable cause because they knew Goldstein could not prove damages based on her deposition testimony that her former employer, Back to Back, went out of business after she left its employ and did not pay her certain commissions to which she was entitled. However, this testimony was given *after* the complaint was filed and, therefore, does not indicate that the lawyers knew damages could not be proved when the complaint was filed. Moreover, a reasonable inference is that Back to Back went out of business *because* Goldstein left and took her Target business with her. Swat-Fame also argues that Goldstein could never prove damages because she testified she did not turn down any other job offers to go to work for Swat-Fame. Again, this testimony postdated the filing of the complaint. Moreover, Goldstein testified that she was talking to two other companies during her job search but broke off those talks when she accepted Swat-Fame's offer of employment. A trier of fact could reasonably conclude that if Goldstein had *not* gone to work for Swat-Fame, she would have continued discussions with the other companies and ultimately gone to work for one of them.

ii. *The lawyers had no notice of specific factual mistakes in Goldstein's fraud claim.*

Swat-Fame argues that, even if the facts alleged in the complaint stated a cause of action for fraudulent inducement, other facts known to the lawyers at the time of filing negated probable cause. Relying on our decision in *Arcaro v. Silva & Silva Enterprises Corp.* (1999) 77 Cal.App.4th 152, 156-157 [91 Cal.Rptr.2d 433] (*Arcaro*), Swat-Fame contends that, because it sent a letter to the lawyers denying Goldstein's claim, the lawyers were on notice the claim was not tenable and should have investigated further before filing suit.

In *Arcaro, supra,* 77 Cal.App.4th 152, we found a collection agency lacked probable cause to file an action on a guarantee purportedly executed by Arcaro. When contacted by the collection agency, Arcaro told the agency that the signature on the guarantee was a forgery and provided handwriting

samples and the name of the suspected forger. The collection agency instructed its attorneys to file suit anyway. (*Id.* at p. 155.) Arcaro prevailed in the underlying suit and successfully sued the collection agency for malicious prosecution. (*Id.* at pp. 158-159.)

The outcome in *Arcaro, supra,* 77 Cal.App.4th 152, hinged on the fact the plaintiff in the underlying action was given specific information as to verifiable facts that, if true, would totally negate its cause of action. Normally, the adequacy of a prefiling investigation is not relevant to the determination of probable cause. (See *Sheldon Appel, supra,* 47 Cal.3d at p. 883 [adequacy of investigation and research is relevant to the issue of malice, but not to the issue of probable cause].) In the unusual circumstances of *Arcaro*, however, we found the party had a duty to investigate further before filing suit. Notably, the collection agency's attorneys were not named as defendants in the malicious prosecution action; and *Arcaro* contains no hint that the attorneys lacked probable cause to file suit based on the facts known to them. To the contrary, *Arcaro* suggests the attorneys were entitled to rely on the genuineness of Arcaro's signature on the guarantee and had no duty to investigate before filing suit. (*Arcaro,* at pp. 158-159 ["[I]n most cases Hammer would have been entitled to assume the signature on the credit application was genuine. But, when a party is put on notice a fundamental element of its case is disputed, it should not proceed without evidence sufficient to support a favorable judgment on that element or at least information affording an inference such evidence can be obtained. [¶] In the present case, Hammer lacked probable cause to sue Arcaro on the guarantee because it had no objective, reasonable basis in the facts known to it for a belief Arcaro's purported signature was genuine."].)

Swat-Fame's only prefiling communication with the lawyers was a terse letter stating "[y]ou are substantially misinformed regarding the facts." Such letters are commonly exchanged between counsel in almost every civil dispute—often before either counsel has had an opportunity to fully investigate the facts. We decline to hold that Swat-Fame's boilerplate denial of the facts contained in Rosen's demand letter can be said to have put the lawyers on notice of any specific fatal flaw in Goldstein's claim, and thereby negate probable cause for filing the fraud action.[10]

b.  *Under California Law, a Lawyer Has No Liability for Continuing an Action Where Probable Cause Existed at Time of Filing.*

Swat-Fame contends a party can be held liable for malicious prosecution even if he or she first becomes aware of facts that negate the claim after the

---

[10]Indeed, the only specific mention of a factual inaccuracy had to do with the terms of Goldstein's employment contract, which was not at issue in the fraud claim and provided no reason to doubt Goldstein's description of her preemployment discussions with Swat-Fame.

litigation is commenced and argues the lawyers should be held liable for filing a first amended complaint and thereafter continuing to pursue Goldstein's fraud claim after she admitted at her deposition the truth of the allegedly false statements upon which her claim was based. Swat-Fame's contention is at odds with the very definition of the tort of malicious prosecution. "To establish a cause of action for the malicious prosecution of a civil proceeding, a plaintiff must plead and prove that the prior action (1) *was commenced* by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2) *was brought* without probable cause [citations]; and (3) *was initiated* with malice [citations]." (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 50 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878] (*Bertero*), italics added.)

We recently held in *Vanzant v. DaimlerChrysler Corp.* (2002) 96 Cal.App.4th 1283 [118 Cal.Rptr.2d 48], notwithstanding the Restatement Second of Torts position to the contrary (see Rest.2d Torts, § 674 ["One who takes an active part in the initiation, *continuation* or procurement of civil proceedings against another is subject to liability to the other for wrongful civil proceedings . . . ."]), that "California courts have typically refused to permit malicious prosecution claims where, as here, the claim is based on the continuation of a properly initiated existing proceeding. [Citations.]" (*Vanzant*, at p. 1290.) The long-standing rule in California is that, if probable cause exists at the outset of the action, the party acting with probable cause is insulated from liability for malicious prosecution. (See *Hufstedler, Kaus & Ettinger v. Superior Court, supra*, 42 Cal.App.4th at p. 66 [*Sheldon Appel, supra*, 47 Cal.3d at p. 884, articulated "a standard for determining whether the underlying action was objectively tenable *when filed*" (italics added)].)[11]

In arguing for a contrary rule, Swat-Fame mistakenly relies on an incomplete quotation from a footnote in *Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118 [270 Cal.Rptr. 1, 791 P.2d 587], in which the Supreme Court observed that a "person who is injured by groundless litigation may seek compensation from any person who procures or is actively instrumental in putting the litigation in motion or participates after the institution of the action." (*Id.* at p. 1131, fn. 11.) Citing *Sheldon Appel* and *Bertero*, the *Bear Stearns* Court summarized well-established California law, stating, "The bringing of a colorable claim is not actionable; plaintiff in a

---

[11]In *Vanzant v. DaimlerChrysler Corp., supra*, 96 Cal.App.4th 1283, we also observed that " '[T]he better means of addressing the problem of unjustified litigation is through the adoption of measures facilitating the speedy resolution of the initial lawsuit and *authorizing the imposition of sanctions for frivolous or delaying conduct within that first action itself*, rather than through an expansion of the opportunities for initiating one or more additional rounds of malicious prosecution litigation after the first action has been concluded.' ([*Sheldon Appel*], *supra*, 47 Cal.3d at p. 873, italics added.)" (*Vanzant*, at p. 1291, fn. 4.)

malicious prosecution action must prove that the prior action was brought without probable cause and was pursued to a legal termination in plaintiff's favor." (*Id.* at p. 1131.) The court then noted, in the sentence omitted by Swat-Fame, "[t]he instigator, as well as the party, may be liable." (*Id.* at p. 1131, fn. 11.) The first case cited in the footnote, *Jacques Interiors v. Petrak* (1987) 188 Cal.App.3d 1363, 1371-1373 [234 Cal.Rptr. 44], stands for that specific proposition—one not the plaintiff in the underlying action but who without probable cause and with malice caused the underlying groundless litigation to be *initiated* may be liable for malicious prosecution. *Lujan v. Gordon* (1977) 70 Cal.App.3d 260 [138 Cal.Rptr. 654], the other case cited in the *Bear Stearns* footnote, holds that one who without probable cause, and with malice "aids and abets a malicious prosecution after someone else has commenced it may be held liable." (*Id.* at p. 263.) In each case, the underlying action was initiated without probable cause, and the defendant lacked probable cause to support it. In this case, in contrast, based on the information available to them, the lawyers had probable cause at the time they *initiated* the underlying action.[12]

## 4. *The Trial Court Erred in Granting Summary Judgment in Favor of Goldstein.*

### a. *Triable Issues of Fact Exist as to Whether Goldstein Is Entitled to Rely on the Advice-of-Counsel Defense to Malicious Prosecution.*

■    Goldstein argues she was entitled to rely on the advice of her counsel in bringing the underlying action, and therefore summary judgment was proper as to the malicious prosecution claim against her. However, a party

---

[12]Swat-Fame suggests that, even if liability generally may not attach for continuing a claim that was initially brought with probable cause, the lawyers "re-initiated" the fraud claim without probable cause when they filed the first amended complaint, with the fraud claim unchanged, after Goldstein's deposition. Certainly, an amended complaint that *adds* an untenable claim may form the basis for a later suit for malicious prosecution (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 687 [34 Cal.Rptr.2d 386, 881 P.2d 1083] [malicious prosecution action is proper when less than all causes of action in the underlying action were not tenable]; *Bertero, supra,* 13 Cal.3d at p. 55-57 [court properly instructed jury to find for malicious prosecution plaintiff even if only one of the three theories of liability in the underlying action lacked probable cause]). However, in this case the first amended complaint was filed in response to a demurrer that challenged the cause of action for breach of fiduciary duty. Rather than oppose the demurrer, the lawyers amended the complaint to eliminate the breach of fiduciary duty claim. The fraud claim apparently was not at issue in the demurrer, nor was it changed in any way in the first amended complaint. Refiling the fraud claim was therefore simply a necessary adjunct to an amendment that eliminated the claim for breach of fiduciary duty. Lawyers should be free to eliminate causes of action they recognize to be meritless without having to make a fresh probable cause inquiry as to the remaining causes of action. To hold otherwise would be to discourage the salutary practice of voluntarily amending a complaint in response to a demurrer.

may only rely on advice of counsel if that party has fully and truthfully disclosed the relevant facts to counsel and has acted in good faith. (*Bertero, supra,* 13 Cal.3d at pp. 53-54 [it is a defense to a malicious prosecution action to show the action "was filed pursuant to the advice of counsel after the full disclosure of all relevant facts and that a person acting on the advice of counsel . . . has proceeded with probable cause and in good faith," but "if the initiator acts in bad faith or withholds from counsel facts he knew or should have known would defeat a cause of action otherwise appearing from the information supplied, that defense fails"].) This has been the law for more than 100 years. (*Levy v. Brannan* (1870) 39 Cal. 485, 486 ["Advice of counsel could be no defense, when the prosecutor knows that the statements made by him, upon which the malicious prosecution is based, are untrue."]; *Franzen v. Shenk* (1923) 192 Cal. 572, 576 [221 P. 932] [" 'if the "advice of counsel," . . . was in part based upon a false statement of fact by the defendant, then the advice so given, and followed by the action taken by him pursuant to that advice, does not constitute a defense to [malicious prosecution] action' "].)

Goldstein admitted at her deposition that the allegedly false statements Swat-Fame made to induce her to accept employment as a sales representative were, in fact, true. There is no indication that Goldstein told this to her lawyers before they filed suit. To the contrary, the undisputed facts establish that Goldstein did not tell the lawyers before they instituted suit on her behalf that the allegations upon which they based the complaint were inaccurate. Accordingly, the record before the trial court supports the conclusion that Goldstein believed the allegedly false statements to be true but did not disclose that belief to her counsel. At the very least, there is a triable issue of fact on this point; and summary judgment in favor of Goldstein cannot be affirmed based on her advice-of-counsel defense.

There is also a triable issue as to whether Goldstein fully and truthfully disclosed Target's reason for discontinuing its orders from Swat-Fame. Goldstein told her lawyers that, at a meeting at Target's headquarters, Target personnel told her Target would not place any more orders with Swat-Fame because it lacked confidence in Swat-Fame's production capability. However, in his declaration Sharron, a former Swat-Fame executive who was also present at the meeting, testified that Target said it would not be placing new orders with Swat-Fame because of corporate pressure to purchase merchandise from its parent company rather than from outside vendors such as Swat-Fame. Sharron's declaration creates a triable issue of fact as to what actually happened at the meeting and, therefore, as to whether the version Goldstein gave her lawyers was true.

Even if Goldstein cannot prevail on summary judgment based on her advice-of-counsel defense, she was entitled to the order granting her motion

for summary judgment if she established that, based on the undisputed facts, the original complaint was legally tenable on the facts known to her at the time it was filed. (*Leonardini v. Shell Oil Co.* (1989) 216 Cal.App.3d 547, 569, fn. 7 [264 Cal.Rptr. 883] (*Leonardini*) ["we believe the legal tenability standard is the appropriate measure of probable cause to apply to the plaintiff in the former action who does not rely upon advice of counsel as a defense"].) We conclude triable issues of fact exist on this point, as well.

   b.   *The Trial Court Improperly Weighed the Evidence in Determining No Triable Issues of Fact Exist as to Whether Goldstein Knew Swat-Fame's Allegedly False Statements Were True When Made.*

In concluding Goldstein had probable cause to initiate her lawsuit against Swat-Fame, the trial court found that Swat-Fame had mischaracterized Goldstein's deposition testimony as stating she did not believe Swat-Fame's agents had misrepresented their ability to handle Target's anticipated production demands. "The context of this testimony, however, reveals that Goldstein meant she had no reason to believe that Plaintiff's agents were lying to her at the time the representations were made. [¶] . . . [¶] The only serious issue is whether Defendants had reason to believe [at the time the lawsuit was filed] that Plaintiff knew of the falsity of its statement concerning its ability to handle Target's production demands at the time it was made." The court found Goldstein's reliance "upon the hindsight of actual falsity as supporting this conclusion" as "minimal [but] sufficient to shift the burden to Plaintiff, which does not adequately rebut this position by presenting a material issue of fact."

In its opposition to defendants' summary judgment motion, Swat-Fame cited to portions of Goldstein's deposition testimony that are reasonably susceptible to the interpretation offered by Swat-Fame—that "Goldstein admitted that Swat-Fame had a reasonable basis for its opinion that it could handle the product which she promised to book with Target."[13] In addition,

---

[13]The cited testimony read:
   "Q: When Swat.Fame told you—when Swat.Fame—when you were interviewing with a job and Swat.Fame told you that they could handle the business that you could bring in, the 7 to 9 million dollars, do you think they were lying to you?
   "A: I don't know.
   "Q: Do you know—did anybody tell you how much volume Swat.Fame did at the time you took the job?
   "A: Yes.
   "Q: What?
   "A: What?
   "Q: What did they tell you was their volume?
   "A: Over a hundred million dollars.

defendants' evidence of "actual falsity" based on hindsight—that is, the assertion that Target terminated its relationship with Swat-Fame because of concerns about production—was directly disputed by the declaration of Lowell Sharron submitted with Swat-Fame's opposition papers.

In concluding that Goldstein had established probable cause as a matter of law, the trial court either misunderstood this testimony or improperly weighed the evidence and failed to adhere to the rule that the evidence of the moving party (Goldstein) should be strictly construed, while that of the opposing party should be liberally construed, with all doubts being resolved in favor of the opposing party. (*Salazar v. Southern Cal. Gas Co.* (1997) 54 Cal.App.4th 1370, 1375-1376 [63 Cal.Rptr.2d 522]; *Katz v. Chevron Corp., supra,* 22 Cal.App.4th at p. 1365.) In either event, it was error for the trial court to rely on its interpretation of this evidence in granting summary judgment in favor of Goldstein. (Code Civ. Proc., § 437c, subd. (c) ["summary judgment shall not be granted by the court based on inferences reasonably deducible form the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact"].) If Goldstein believed to be true all the statements she alleged as falsehoods in her complaint, then her fraud claim was not supported by probable cause. That is a triable issue of fact that precludes summary judgment in her favor.[14]

"Q: Did you believe them?

"A: Yes.

"Q: Do you have any reason to believe that they weren't telling you the truth *as you sit here today*?

"A: No.

"Q: They were telling you the truth, weren't they?

"A: I believe yes, they were." [¶] . . . [¶]

"Q: And when he said that we can handle the Target business, you didn't have any reason to believe that he was lying, that he didn't believe he could do it at the time, do you?

"A: No." [¶] . . . [¶]

"Q: So when Bruce Stern told you that we can handle the Target business that you bring us, you don't have any reason to believe that he wasn't sincere, do you?

"A: I have no reason to believe that he was not sincere." [Italics added.]

[14]It seems anomalous to hold the undisputed facts establish the lawyers acted with probable cause, but that issues of fact preclude a similar finding with respect to their client Goldstein. This seeming contradiction stems from the fact that, while the determination of probable cause is made using an *objective* standard (whether any reasonable lawyer would have thought the claim tenable), application of this objective standard is applied based on the facts subjectively within the defendant's knowledge. (*Leonardini, supra,* 216 Cal.App.3d at p. 567.)

As to Goldstein, there are questions of fact about her knowledge of the truth or falsity of Swat-Fame's allegedly fraudulent statements. Therefore, the objective probable cause determination must await resolution of those questions. (See *Leonardini, supra,* 216 Cal.App.3d at pp. 569-570 ["Of course, there may be factual questions which require resolution before the objective standard can be applied. For instance, there may be evidentiary disputes over the information and facts known to the defendant when it brought the prior action or it may be claimed the defendant was aware of information that established the lack of truth in his

c. *There Are Triable Issues of Fact with Respect to Whether Goldstein Acted with Malice.*

The existence of malice is a question of fact to be determined by the jury. (*Sheldon Appel, supra,* 47 Cal.3d at p. 874 ["The 'malice' element of the malicious prosecution tort relates to the subjective intent or purpose with which the defendant acted in initiating the prior action, and . . . is a question of fact to be determined by the jury"].) "The malice required in an action for malicious prosecution is not limited to actual hostility or ill will toward plaintiff but exists when the proceedings are instituted primarily for an improper purpose. [Citations.]" (*Albertson v. Raboff* (1956) 46 Cal.2d 375, 383 [295 P.2d 405].)

Before *Sheldon Appel* California case law consistently held that the element of malice could be inferred from the absence of probable cause. We agree with the conclusion and analysis of Division Three of our court in *Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478 [78 Cal.Rptr.2d 142] that such an inference is no longer justified absent some additional information that supports a finding of malice: "Prior to *Sheldon Appel,* such a rule had a logical basis since, as the Supreme Court had previously said, '. . . probable cause requires a *reasonable belief* in the validity of the claim asserted.' [Citation.] The absence of a reasonable belief in the claim, a factor relating to the defendant's *subjective* state of mind, would logically permit an inference that the prior action had in fact been prosecuted for an improper purpose. However, under the standard adopted in *Sheldon Appel,* the factor of a 'reasonable' or 'honest' belief in the claim asserted is no longer relevant to, nor a part of, the court's determination as to the existence of probable cause. [¶] Thus, by itself, the conclusion that probable cause is absent logically tells the trier of fact nothing about the defendant's subjective state of mind. That being so, it does not seem logical to permit any inference to be drawn as to a *subjective* state of mind solely form the absence of *objective* tenability. . . . Merely because the prior action lacked legal tenability, as measured objectively . . . , *without more,* would not logically or reasonably permit the inference that such lack of probable cause was accompanied by

factual allegations. In such circumstances the threshold question of the state of the defendant's knowledge of the facts must be resolved by the jury before application of the objective probable cause standard."].)

There are no such disputed facts as to the lawyers. The trial court properly resolved the question of probable cause in the lawyers' favor as a matter of law. (*Leonardini, supra,* 216 Cal.App.3d at p. 570 ["But when the state of the defendant's knowledge of the facts has been determined or is undisputed then his subjective belief in the legal validity of his claim is irrelevant [to the question of probable cause] and the only question is whether, based upon his knowledge, his action was objectively reasonable. [Citation.] That determination is always to be made by the court and not by the jury."].)

the actor's subjective malicious state of mind. In other words, the presence of malice must be established by other, additional evidence. [Fn. omitted.]" (*Downey Venture, supra,* 66 Cal.App.4th at p. 498.)

While after *Sheldon Appel* a lack of probable cause, standing alone, does not support an inference of malice, malice may still be inferred when a party *knowingly* brings an action without probable cause. (*Albertson v. Raboff, supra,* 46 Cal.2d at p. 383 [" 'principal situations in which the civil proceedings are initiated for an improper purpose are those in which (1) the person initiating them does not believe that his claim may be held valid. . . .' "]; see *Sheldon Appel, supra,* 47 Cal.3d at p. 881 ["evidence that the defendant attorney did not subjectively believe that the action was tenable would clearly be relevant to the question of malice"].) If the trier of fact were to find Goldstein knowingly alleged the statements were false even though she knew they were true, that would support a finding of malice. Because the evidence on this point is in dispute, the trial court erred in finding no triable issue of fact as to malice.[15]

## DISPOSITION

The judgment is affirmed as to the lawyers. The judgment is reversed as to Goldstein and remanded to the trial court for further proceedings not inconsistent with this opinion. The parties shall bear their own costs on appeal.

Lillie, P. J., and Johnson, J., concurred.

---

[15]In addition to the issue whether she knowingly brought her claim without probable cause, a trier of fact could also infer an improper purpose from Goldstein's calculation of commissions due her, which she admitted was based on gross orders rather than actual shipments as provided for in her employment agreement, and from her initial settlement demand of $450,000—almost 10 times the amount of commissions actually due. (See *Albertson v. Raboff, supra,* 46 Cal.2d at p. 383 [malice can be shown when " 'the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim' "].)