Filed 12/23/13  Greenberg v. Silver CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LARRY GREENBERG et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> GERALD N. SILVER, <br><br> Defendant and Appellant. | B244677 <br><br> (Los Angeles County <br> Super. Ct. No. BC465240) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Amy D. Hogue, Judge.  Affirmed.

Richard D. Rome for Defendant and Appellant.

Dimitry Z. Tsimberg for Plaintiffs and Respondents.

_____

Appellant, an attorney, appeals from a judgment entered after the trial court, sitting as the trier of fact, found that appellant maliciously prosecuted a fraudulent inducement cause of action. We conclude that all elements of respondents' malicious prosecution claim were supported by the law and the facts. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Underlying Litigation[1]

Plaintiffs Larry and Cindy Greenberg[2] hired Jose Flores to work on their residence as a contractor in 2007. After Flores's initial work was completed, the Greenbergs entered into a written contract with Flores on December 21, 2007, for a bathroom remodel and additional work; the contract listed a total cost of $55,000.

Due to a failure to maintain bonds required by the Contractors State License Board (CSLB), Flores's contractor's license had lapsed when he began working for the Greenbergs. In December 2007, Flores submitted an application and a fee to secure the required bonds. When he entered into the contract with the Greenbergs on December 21, 2007, he thought that his license had been reinstated. He soon discovered that it had not been, and he sent a number of letters to the CSLB, obtaining reinstatement of his license on January 25, 2008.

In approximately March 2008, a dispute arose between the Greenbergs and Flores over alleged plumbing problems and unauthorized plumbing work. The Greenbergs had already paid Flores about $55,000 on the December 2007 contract, as well as an additional $50,000 for the work preceding December 2007. Flores maintained that additional payments were required for change orders reflecting extra work requested by Larry. The parties were not able to resolve their differences, and the Greenbergs made no further payments to Flores.

---

[1]     The Greenbergs' motion to augment the record on appeal, filed on September 9, 2013, is granted.

[2]     In order to avoid confusion and for sake of brevity, Mr. and Mrs. Greenberg are often referred to by their first names only in this opinion.

2

In around March 2008, Flores met with defendant, Gerald Silver, to obtain legal advice about the money he believed he was owed. Silver recommended that Flores record a mechanic's lien, and a mechanic's lien in the amount of $23,600 was recorded on the Greenbergs' property on September 3, 2008. Thereafter, in December 2008, Silver, on behalf of Flores, filed a limited jurisdiction complaint against the Greenbergs alleging seven causes of action: (1) fraudulent inducement; (2) breach of written contract; (3) breach of oral contract; (4) reasonable value of work, labor, and services performed; (5) agreed price for work, labor, services, and materials provided; (6) open book account; and (7) foreclosure of mechanic's lien. The Greenbergs subsequently filed a cross-complaint, causing the case to be reclassified as unlimited jurisdiction.

The Greenbergs sought to dispose of Flores's complaint by demurrer and then motion for judgment on the pleadings, but both pleadings were denied. In July 2010, the Greenbergs filed a motion for summary judgment contending that all of Flores's claims were barred by his failure to hold a valid license at all times while he worked for the Greenbergs. Meanwhile, shortly before the motion for summary judgment, Silver withdrew from his representation of Flores. Flores's new attorney opted not to oppose the motion for summary judgment, deeming it meritorious.

The motion for summary judgment was heard and granted by the court on December 7, 2010, and the corresponding order was entered in January 2011. Shortly after the summary judgment hearing, Flores gave a "statement under oath" in a setting similar to a deposition, in which he divulged the content of his attorney-client communications with Silver. In February 2011, Flores and the Greenbergs entered into a settlement agreement resolving the allegations of the cross-complaint. The agreement called for Flores to pay $80,000 to the Greenbergs, but provided that the Greenbergs would accept a total of $8,000 from Flores as full payment, on the condition that Flores agreed to assist the Greenbergs in their malicious prosecution action against Silver, including by waiving his attorney-client privilege with Silver and turning over his written communications with Silver. A stipulated judgment was entered in favor of the Greenbergs.

**The Instant Matter**

The Greenbergs filed this malicious prosecution action against Silver in July 2011. A four-day bench trial commenced on June 26, 2012.

At trial, Flores testified at length about his communications with Silver. Flores recounted how the first time he spoke with Silver about the Greenbergs, Silver intimated that he knew Larry, and called him a "crazy guy." Silver told Flores that he had previously represented a client who had a dispute with Larry, and that he "was the kind of guy that he would just hire people, give them some money to get it going, and then complain about the quality of the work, and then just try not to pay . . . the person."

Flores's testimony revealed a number of discrepancies between what Flores discussed with Silver and the actual allegations of Flores's complaint against the Greenbergs, which was prepared by Silver. For example, Flores testified that when he first talked to Silver about the Greenberg dispute he told him about his license problems and showed him relevant documentation. Nevertheless, the complaint prepared by Silver alleged that "at all material times" Flores was "duly licensed." Additionally, Flores testified that he did not tell Silver that the Greenbergs conspired against him or sought to defraud him. Regardless, the complaint stated: "[T]he Greenbergs intentionally, willfully and knowingly have solicited contractors, including but not limited to [Flores], whom were either unlicensed or improperly licensed or out of license classification, to perform construction for contract prices below the fair market value. By their conspiracy and plan, the Greenbergs used threats of [CSLB] discipline and litigation to coerce and force contractors, including but not limited to [Flores], to furnish work, labor, services, and materials for construction to the [Greenbergs] free of charge."

Flores further testified that his decision not to oppose the Greenbergs' motion for summary judgment was not related to any promise made by them. Flores admitted that he would have "signed anything" to get out of his case with the Greenbergs, and he acknowledged that the settlement agreement required him to cooperate in the Greenbergs' case against Silver, but he maintained that his testimony in this matter was truthful.

4

Larry testified that he first met Silver in 2002, when the Greenbergs had a dispute with their electrician. According to Larry, the electrician did a "sloppy job." The CSLB investigated and determined that the house could have burned down. Despite the problems, Larry paid the electrician $8,000 on a $9,000 contract. Afterward, the electrician, represented by Silver, recorded a mechanic's lien against the Greenbergs' property, a matter that was eventually resolved.

As for his dealings with Flores, Larry testified that he eventually had to pay a licensed plumber and other workers a significant amount to fix the plumbing problems caused by Flores. The Greenbergs filed a complaint with the CSLB in August 2008 based on Flores's workmanship, which they later sought to withdraw after settling with Flores. Larry denied soliciting unlicensed contractors or threatening contractors into working for free, and stated that he had intended to pay Flores for all amounts owing under their contract. Larry also testified how, while he and his attorney were in the courthouse hallway following his failed demurrer in the underlying litigation, Silver yelled at him, "You cheat contractors." Finally, Larry denied making any agreement with Flores not to oppose the motion for summary judgment.

Silver testified that prior to the time he filed Flores's complaint in December 2008, Flores did not tell him that he had problems with his contractor's license. Silver denied reading an e-mail sent to him by Larry in November 2008 stating that Flores had not been licensed. He further testified that he spoke with two former employees of the CSLB, who told him that even if Flores was not licensed, he had substantially complied with the license requirements, and could therefore bring suit. Silver denied yelling at Larry in the courthouse.

Following closing argument, the trial court stated that its tentative decision was to find that only the fraudulent inducement cause of action was maliciously prosecuted by Silver. The trial court invited closing briefs, which both sides filed. The court issued its statement of decision on October 5, 2012, finding in favor of the Greenbergs on the basis that Silver had prosecuted the fraudulent inducement claim without probable cause and with malice.

5

The trial court's statement of decision was lengthy and detailed. It found that, as a matter of law, the underlying matter was terminated in favor of the Greenbergs because of their successful summary judgment motion. It further determined that Silver lacked probable cause to sue for fraudulent inducement, finding no evidence that Silver relied on information provided by Flores when drafting the allegations upon which the cause of action was based. The trial court noted that the Greenbergs paid Flores a substantial amount of money, including the $55,000 called for by the December 2007 contract. Additionally, the court found that Silver's assertion that the Greenbergs had a practice of fraudulently inducing unlicensed contractors to work for them without pay arose out of Silver's prior representation of the electrician. Silver's testimony about the prior representation was "troubling" because his testimony about key events changed in the middle of trial, he revealed attorney-client communications with the electrician, and his testimony that he advised the electrician to fix the problem was inconsistent with the recordation of a $1,000 mechanic's lien. Further, Silver's admissions that there were problems with the electrical work contradicted the allegations in the underlying case that the Greenbergs cheated contractors. Moreover, it was undisputed that Silver had no prior dealings with Cindy Greenberg, and therefore his allegations that she conspired with her husband were particularly lacking in probable cause. The court also found that Silver filed the fraudulent inducement claim with malice, writing that "the genesis of the fraudulent inducement claim was Silver's misguided animus toward Greenberg."

The trial court awarded damages to the Greenbergs totaling $125,000, consisting of $25,000 for attorney fees incurred in the underlying action, $50,000 in general damages to Larry, $25,000 in general damages to Cindy, and $25,000 in punitive damages. Judgment was entered on October 5, 2012. Silver timely appealed.

## DISCUSSION

In order to succeed in a malicious prosecution action, the plaintiff must show (1) that the underlying action was terminated in his or her favor, (2) that the underlying action was brought without probable cause, and (3) that the underlying action was initiated with malice. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871

6

(*Sheldon Appel*).) Silver contends that the Greenbergs failed to show any of these required elements. He also argues that the damages awarded to the Greenbergs were not supported by substantial evidence.

Our review of this matter is constrained by the legal standards governing consideration of a statement of decision. "In general, in reviewing a judgment based upon a statement of decision following a bench trial, 'any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision.' [Citations.] In a substantial evidence challenge to a judgment, the appellate court will 'consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.]' [Citation.] We may not reweigh the evidence and are bound by the trial court's credibility determinations. [Citations.] Moreover, findings of fact are liberally construed to support the judgment. [Citation.]" (*Estate of Young* (2008) 160 Cal.App.4th 62, 75-76.)

## I. <u>Termination in the Greenbergs' Favor</u>

Silver asserts that the trial court's finding that the underlying litigation terminated in the Greenbergs' favor was erroneous in two respects. First, Silver argues that the trial court was required to "look behind" the underlying summary judgment order and determine the reasons for its entry, rather than just accept as a matter of law that summary judgment equated to favorable termination. Silver's second contention is that the summary judgment in the underlying case was orchestrated and part of a settlement agreement between the Greenbergs and Flores, and it therefore did not constitute a favorable termination on the merits.

"To determine 'whether there was a favorable termination,' we 'look at the judgment as a whole in the prior action.'" (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 341.) The element of favorable termination is generally a question of law. (See *Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135, 1149 (*Sierra Club*).) However, "'[s]hould a conflict arise as to the circumstances of the termination, the determination of the reasons underlying the dismissal is a question of fact.'"

(*Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1399 (*Sycamore Ridge*).)

Simply because a plaintiff prevailed in the underlying action does not mean that the case resulted in favorable termination. "Favorable termination can occur short of a trial on the merits, but it must bear on the merits." (*Sierra Club*, *supra*, 72 Cal.App.4th at p. 1149.) In *Sierra Club*, the court examined the circumstances of a successful summary judgment motion to determine whether the summary judgment constituted a favorable termination. (*Id.* at pp. 1149-1153.) Analyzing the evidence, the court found that termination was on the merits because the evidence did not support the plaintiff's claims. (*Ibid.*)

Silver contends that the trial court here failed to analyze the evidence in the underlying case and merely treated the successful summary judgment as a favorable termination on the merits. We find that the trial court's ruling that the underlying litigation terminated favorably on the merits in favor of the Greenbergs was not in error. The order granting summary judgment stated that Flores did not hold a valid license from March 27, 2007 to January 24, 2008, and that this lack of a license prevented Flores from recovering on any of his claims. Although we agree with Silver that the order should have been more detailed, the lack of detail does not change the fact that the Greenbergs successfully defended against the fraudulent inducement (and other) causes of action.

In their motion for summary judgment in the underlying action, the Greenbergs argued that Flores's lack of a license precluded a fraudulent inducement claim pursuant to Business and Professions Code section 7031 and the case *Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988. This argument was legitimate. Business and Professions Code section 7031, subdivision (a) states in relevant part: "no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract where a license is required by this chapter without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract, regardless of the merits of the

8

cause of action brought by the person." *Hydrotech* applied this licensing requirement to a fraudulent inducement cause of action, holding that "an unlicensed contractor may not circumvent the clear provisions and purposes of section 7031 simply by alleging that when the illegal contract was made, the other party had no intention of performing." (*Hydrotech*, at pp. 993, 998.)

Thus, the trial court in the instant matter was correct when it found that the Greenbergs successfully shifted the burden of proof to Flores. "A defendant moving for summary judgment satisfies its burden of showing a claim lacks merit if the defendant can show one or more elements of a cause of action cannot be established because the plaintiff does not possess and cannot reasonably obtain the evidence necessary to establish the claim, or a complete defense to that cause of action exists. [Citations.] If this burden of production is met, the burden shifts to the plaintiff to set forth specific facts sufficient to establish a prima facie showing of the existence of a triable material issue of fact." (*Kirby v. Sega of America, Inc.* (2006) 144 Cal.App.4th 47, 54.) If the plaintiff does not do so, summary judgment is proper. (Code Civ. Proc., § 437c, subd. (p)(2).)

Silver contends that Flores's decision not to oppose the summary judgment was equivalent to a voluntary dismissal, and that Flores had a legitimate argument to counter the summary judgment motion—that Flores substantially complied with the licensing requirements. Neither of these contentions is sufficient to show that the termination was not on the merits. "A voluntary dismissal is presumed to be a favorable termination on the merits, unless otherwise proved to a jury. [Citation.] This is because '"[a] dismissal for failure to prosecute . . . does reflect on the merits of the action [and in favor of the defendant] . . . . The reflection arises from the natural assumption that one does not simply abandon a meritorious action once instituted."'" (*Sycamore Ridge*, *supra*, 157 Cal.App.4th at p. 1400.) The question of whether Flores could have successfully argued that he substantially complied with the licensing requirements is, at this point, effectively irrelevant. The underlying ruling that Flores was not licensed was a finding on the merits

9

that Flores could not pursue his claim; the trial court here was in no position to relitigate the underlying summary judgment motion.

Silver's second argument that the decision not to oppose the underlying summary judgment motion was an orchestrated component of the settlement between the Greenbergs and Flores also fails. The reason that the underlying case terminated (if disputed) is a question of fact. (*Sycamore Ridge*, *supra*, 157 Cal.App.4th at p. 1399.) When reviewing a judgment based on a statement of decision, we resolve conflicts and reasonable inferences arising from the evidence in favor of the prevailing party. (*Estate of Young*, *supra*, 160 Cal.App.4th at pp. 75-76.) At trial, Flores testified that he did not agree not to oppose the motion for summary judgment in exchange for any favors. Larry testified that he did not make any agreement about the opposition to the motion for summary judgment. And, as Flores's second attorney testified, the settlement agreement was entered into months after the opposition to the motion for summary judgment would be due. Thus, substantial evidence supports the implied finding that the summary judgment procedure was legitimate, and that there was a favorable termination on the merits.

## II. Lack of Probable Cause

Silver next argues that the underlying fraudulent inducement claim alleged facts that were proven at trial in this matter, and that the trial court based its decision of lack of probable cause on an incorrect finding that Larry did not know of Flores's license problems prior to the time they entered into the December 2007 contract. Silver does not dispute that a malicious prosecution claim may lie when a defendant brought multiple causes of action in the underlying action, only one of which was asserted without probable cause. (See *Sycamore Ridge*, *supra*, 157 Cal.App.4th 1385, 1399.)

Probable cause exists where the defendant relied upon facts which he or she had reasonable cause to believe were true, and when the legal theory underlying the cause of action was tenable under the known facts. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292 (*Soukup*).) If "any reasonable attorney" would have considered the claim valid under the circumstances, then no claim for malicious

10

prosecution will lie. (*Sheldon Appel*, *supra*, 47 Cal.3d 863, 886; *Sycamore Ridge*, *supra*, 157 Cal.App.4th at p. 1402.) "In determining whether the prior action was legally tenable, i.e., whether the action was supported by probable cause, the court is to construe the allegations of the underlying complaint liberally, in a light most favorable to the malicious prosecution defendant." (*Sycamore Ridge*, at p. 1402.)

The determination of whether the institution of the underlying lawsuit was legally tenable is a question of law. (*Sheldon Appel*, *supra*, 47 Cal.3d at p. 878.) However, the issue of whether a malicious prosecution defendant had reasonable cause to believe alleged facts were true is a question of fact. (*Id.* at pp. 880-881; *Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 165.) In general, an attorney is entitled to rely on information provided by the client in asserting a claim. (See *Swat-Fame, Inc. v. Goldstein* (2002) 101 Cal. App.4th 613, 625, disapproved on other grounds in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 532, fn. 7, & *Zamos v. Stroud* (2004) 32 Cal.4th 958, 973; *Morrison v. Rudolph* (2002) 103 Cal.App.4th 506, 512-513, disapproved on other ground in *Zamos v. Stroud*, *supra*, 32 Cal.4th at p. 973.)

The issue here is whether Silver had reasonable cause to believe the fraudulent inducement allegations he drafted were true. We find substantial evidence supports the trial court's finding that he did not. We agree with Silver that the trial court mistakenly found that Larry was not aware of Flores's license issues prior to December 2007, as Larry himself testified that Flores told him about the suspension of his license in November 2007. Other allegations in the fraudulent inducement claim—including that Larry reported Flores to the CSLB—were also true. But numerous allegations were false, and the evidence supported the finding that Silver did not base these allegations on anything told to him by Flores.

Paragraph 4 of Flores's complaint, which alleged that the Greenbergs had a practice of coercing unlicensed contractors into performing work for free, was specifically incorporated into the fraudulent inducement cause of action, and was similar in content to allegations contained in paragraph 9 of the complaint. Flores testified that he did not provide Silver with information supporting the statements alleged in

11

paragraph 4. Paragraph 5 of the complaint, also incorporated into the fraudulent inducement cause of action, alleged that at all material times Flores was duly licensed. Flores testified that he told Silver that he lacked a license until January 2008, and, before the underlying complaint was filed, Larry sent Silver an e-mail telling him that Flores was not licensed. Moreover, paragraph 9 of the complaint alleged that Larry complained to the CSLB regarding Flores's lack of a license, but Larry testified that he complained only about Flores's workmanship.

In addition, the evidence supported the trial court's finding that the parties' "history of dealings belied any assertion that the Greenbergs induced Flores to work for them with no intention of paying him." As noted by the trial court, the Greenbergs had already paid Flores approximately $50,000 by the time they entered into the December 2007 contract, and they paid him an additional $55,000 on the contract. The evidence also supported the court's finding that Silver's basis for alleging that the Greenbergs had a practice of fraudulently inducing contractors to work for free arose from his prior involvement with the Greenbergs when he represented the electrician—but even that experience did not justify Silver's allegations. As noted by the trial court, the Greenbergs paid the electrician $8,000 of the $9,000 charged, and Silver himself acknowledged merit in the Greenbergs' complaints about the electrician's work. Finally, the evidence showed that Cindy had very little involvement with Flores or the underlying case, and, as found by the trial court, the allegation that she conspired with her husband to defraud contractors was particularly lacking in probable cause.

## III. Malice

Silver next argues that the Greenbergs failed to show that he acted with malice. The question of whether or not malice was present depends on the defendant's subjective intent or purpose in initiating the prior action. (*Sheldon Appel*, *supra*, 47 Cal.3d 863, 874.) Malice "is not limited to actual hostility or ill will toward the plaintiff. Rather, malice is present when proceedings are instituted primarily for an improper purpose." (*Sierra Club*, *supra*, 72 Cal.App.4th 1135, 1157.) The issue of whether the defendant

acted with malice is a factual matter for the trier of fact to determine. (*Sheldon Appel*, at p. 874.)

The trial court's finding of malice is clearly supported by substantial evidence. As found by the court, Silver, not Flores, generated the fraudulent inducement claim, which (as explained above) lacked probable cause. Malice may be inferred from facts establishing lack of probable cause. (*Soukup, supra,* 39 Cal.4th 260, 292.) Furthermore, evidence presented at trial supported the court's finding that "the genesis of the fraudulent inducement claim was Silver's misguided animus toward Greenberg." When Flores first went to see Silver about the Greenbergs, Silver referred to Larry as a "crazy guy." Silver also told Flores that Larry "was the kind of guy that he would just hire people, give them some money to get it going, and then complain about the quality of the work, and then just try not to pay . . . the person." Moreover, the record reflects that Silver yelled "You cheat contractors" at Larry while they were in a public place—the courthouse. All of these facts support the conclusion that Silver acted with ill will toward the Greenbergs and made the fraudulent inducement claim primarily for an improper purpose.

## IV. <u>Damages</u>

Finally, Silver contends that neither the general damages nor the punitive damages awarded by the trial court were supported by substantial evidence. He provides no reasoned argument to support this assertion.

Silver acknowledges that in a tort action, general damages may be awarded for mental suffering. (See *Parish v. Peters* (1991) 1 Cal.App.4th 202, 211.) Both Larry and Cindy testified at length that they experienced mental suffering due to Silver's prosecution of the underlying matter. The general damages awards of $50,000 to Larry and $25,000 to Cindy were not out of line with the suffering that they experienced. (See *Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 65.)

Silver's argument that punitive damages were improper mirrors his argument that there was probable cause to allege the fraudulent inducement cause of action, an argument that we disposed of above. "When the defendant is found to be guilty of

13

express or implied malice, the jury may award damages against a defendant 'for the sake of example and by way of punishing' him." (*Bertero v. National General Corp.*, *supra*, 13 Cal.3d at p. 65.)  The *Bertero* court stated:  "Viewing the facts in a light most favorable to the judgment, we find that defendants' conduct consisted of filing fabricated claims in order to coerce [the plaintiff] to settle or abandon a legitimate claim.  This flagrant abuse of the judicial process is precisely the type of tortious conduct that an award of exemplary damages is designed to deter." (*Ibid.*)  This holding applies equally well here.[3]

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


FERNS, J.*

---

[3] The Greenbergs' motion for sanctions, filed on September 9, 2013, is denied. Although we find against Silver on each issue raised in his appeal, we cannot say that the appeal is completely devoid of merit, is intended to harass or delay, or is otherwise deserving of sanctions.  Silver makes credible, well-reasoned arguments on the issues of whether there was a favorable termination on the merits and whether the finding of lack of probable cause was supported.  Under these circumstances, sanctions would be inappropriate.

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.