[No. B119385. Second Dist., Div. Seven. Dec. 27, 1999.]

ROGER C. ARCARO, Plaintiff and Respondent, v.
SILVA AND SILVA ENTERPRISES CORP., Defendant and Appellant.

COUNSEL

Kent M. Bridwell for Defendant and Appellant.

William J. Hamilton for Plaintiff and Respondent.

## OPINION

**JOHNSON, J.**—Defendant, doing business as the Hammer Collection Agency, appeals from a judgment for the plaintiff in an action for malicious prosecution. The only issue is whether Hammer had probable cause to institute or maintain the underlying collection action in the face of evidence the plaintiff's signature on a credit application and guarantee was forged. We hold Hammer acted without probable cause in bringing and maintaining the underlying action because it had no objective, reasonable basis in the facts known to it for a belief Arcaro's purported signature was genuine.

### FACTS AND PROCEEDINGS BELOW

The Mark Thomas Construction Company applied for credit with Abco Hardware. The credit application listed Roger Arcaro as the "principal/owner" and "president" of Mark Thomas Construction and the guarantee of payment on the account was signed "Roger Arcaro." Personal information contained on the credit application such as address, telephone number and Social Security number was that of the plaintiff in this action, Roger C. Arcaro, who is a certified public accountant.

In November 1990, Arcaro received a telephone call from Roxanne Hanna in Abco's accounts receivable department asking Arcaro for payment on an open invoice in the amount of $2,762.89. Arcaro denied any knowledge of such an account and asked Hanna to send him documentation. In response, Hanna sent Arcaro copies of the Mark Thomas Construction Company credit application and the invoice. Arcaro called Hanna and told her it was not his signature on the credit application and he believed the forger was Mark Etchegoyen. Etchegoyen, whose middle name was Thomas, had been a client of Arcaro's and the two had shared an office at one time which, according to Arcaro, explained how Etchegoyen could have obtained access to Arcaro's personal information. Arcaro followed up this telephone conversation with a letter to Hanna again stating his signature had been forged and disclaiming any responsibility for the debt. Arcaro received no response to his letter.

Subsequently, Abco assigned the account to Hammer for collection. Douglas Silva, Hammer's vice-president, verified the Social Security number on the credit application as belonging to Arcaro. Silva also had a telephone conversation with Etchegoyen in which Etchegoyen offered to return some of the merchandise on the invoice for credit and told Silva he needed "to talk to his partner, Arcaro." Hammer then wrote to Arcaro demanding payment on the account and threatening suit if the amount was not promptly paid. On

the same day this letter went out, a collector employed by Hammer called Arcaro demanding payment on the account. Arcaro told the collector the signature on the credit application was not his and that his name had been forged. The collector responded, "We don't care. When are you going to pay [the account]?"

Silva testified he determined Arcaro was liable on the account based on the credit application and his "independent investigation." This independent investigation consisted of verifying Arcaro's Social Security number, Etchegoyen's reference to Arcaro as his "partner," and the fact the demand letter sent to Arcaro was not returned. Silva took no steps to investigate Arcaro's claim of forgery. Silva viewed the matter as "a nothing case," meaning it was for a small amount which could become "very costly . . . to process."

When Arcaro refused to pay the account after Hammer's demand letter and telephone call, Hammer referred the matter to its attorney. It did not inform the attorney Arcaro claimed his signature had been forged.

In May 1991, Hammer filed suit against both Arcaro and Etchegoyen for the sum due on the Abco account. In June 1991, Arcaro's attorney wrote to Hammer's attorney, Eugene Siegel, again informing Hammer that Arcaro's signature on the credit application had been forged and enclosing a handwriting exemplar containing ten signatures by Arcaro. Siegel wrote back the following month rejecting the handwriting exemplars as proof Arcaro's signature had been forged and accusing Arcaro's attorney of "unprofessionalism" in not providing Hammer with an analysis by a handwriting expert to support Arcaro's forgery claim. In February 1992, Siegel wrote to Arcaro's attorney in a more conciliatory tone suggesting if Arcaro would provide a copy of his driver's license or some checks or other paperwork signed by him before the credit application was filed it would "go a long way towards possibly resolving this case." Arcaro did not supply these documents because by that time "he was pretty much fed up" and "didn't see why he had to keep jumping through hoops to prove he wasn't this person" who had signed the credit application. Siegel substituted out of the case in March or April of 1992.[1]

In June 1995, Hammer dismissed its collection action against Arcaro and Etchegoyen.

Arcaro then instituted the present malicious prosecution action against Hammer. The case was tried to the court which rendered a verdict for

---

[1]Siegel is not a defendant in the present action.

Arcaro. The trial court found, among other things, "[p]laintiff did not sign the Abco credit application guarantee; the signature on the guarantee is a forgery." As to the issue of probable cause, the court found: "Defendant obtained information that Mark T. Etchegoyen, not Roger Arcaro, was doing business as Mark Thomas Construction, but ignored Mr. Arcaro's protestation—made before the filing of the underlying lawsuit both to Abco and to defendant—that the guarantee was a forgery. After the suit was filed, it ignored the signature exemplars provided by Mr. Arcaro, contending it was his burden to engage a handwriting expert and obtain an opinion. Defendant has also failed to show it made a full disclosure to counsel of all the material facts it knew, including that Mr. Arcaro contended his signature had been forged and that, contrary to the credit application, it was Mr. Etchegoyen, not Mr. Arcaro, that was doing business as Mark Thomas Construction."

Based on these findings of fact, the trial court concluded the underlying action was commenced by or at the direction of defendant, terminated in plaintiff's favor, was brought without probable cause, was initiated with malice and plaintiff suffered damage.

Hammer filed a timely appeal contesting only the conclusion it had acted without probable cause.[2] We affirm the judgment.

## DISCUSSION

Because the element of probable cause is a question of law for the court to decide (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 875 [254 Cal.Rptr. 336, 765 P.2d 498]), the parties agree our review is de novo. (Cf. *Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135, 1149 [85 Cal.Rptr.2d 726].)

In *Sheldon Appel*, our Supreme Court held the test for probable cause is "whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable." (47 Cal.3d at p. 878.) The court further held an action is "tenable" from the legal perspective if it is supported by existing authority or the reasonable extension of that authority. (*Id.* at p. 886.) The court did not address tenability from the factual perspective. (1) Factual tenability was addressed, however, in *Puryear v. Golden Bear Ins. Co.* (1998) 66 Cal.App.4th 1188, 1195 [78 Cal.Rptr.2d 507] in which the Court of Appeal held: "[P]robable cause requires evidence sufficient to prevail in the action or at least information reasonably warranting an inference there is such evidence." To put it another way, probable cause is

---

[2]Given the trial court's findings of fact, Hammer does not argue it acted with probable cause based on advice of counsel.

lacking "when a prospective plaintiff and counsel do not have evidence sufficient to uphold a favorable judgment or information affording an inference that such evidence can be obtained for trial." (*Ibid.*)

■ Based on our de novo review of the probable cause element, we conclude Hammer's action was not factually tenable.

It must be noted at the outset that had Arcaro not denied the authenticity of his signature Hammer would have had probable cause to maintain the collection action against him. The credit application named "Roger Arcaro" as the "principal/owner" and "president" of Mark Thomas Construction and was signed with the name "Roger Arcaro." Furthermore, the Social Security number, address, telephone number and other personal information on the application matched the "Roger Arcaro" from whom payment was demanded.

But Arcaro *did* deny the authenticity of his signature. He denied it to the representative of Abco, the collector from Hammer, the vice-president of Hammer and to Hammer's attorney. In addition to claiming his signature was forged, Arcaro provided the name of the person he suspected of the forgery—a person Hammer already knew was involved with Mark Thomas Construction—and he provided a reasonable explanation of how that person could have acquired the personal information about Arcaro which appeared on the credit application. Arcaro also provided Hammer with 10 sample signatures, which no reasonable person could conclude resembled the signature on the credit application.

Thus, Hammer was on notice before it filed the action against Arcaro as well as afterward that Arcaro's forgery claim was not a sham defense which would be dropped at trial and that it would have to authenticate Arcaro's signature at trial in order to prevail. (Evid. Code, § 500.) Hammer also knew it could not meet its burden of proof.[3] At no time had Arcaro ever admitted the signature's authenticity nor acted upon it as authentic. (Evid. Code, § 1414.) Nor did Hammer possess any extrinsic evidence of the genuineness of the signature. (Evid. Code, §§ 1415-1421.)[4]

Hammer argues even if it lacked evidence sufficient to prevail in the underlying action it satisfied the probable cause test if it had "information

---

[3]Hammer concedes on appeal "it may be true that liability on the guarantee could not have been established absent such proof." (Evid. Code, § 1400 et seq.)

[4]Evidence Code section 1421 provides: "A writing may be authenticated by evidence that the writing refers to or states matters that are *unlikely* to be known to anyone other than the person who is claimed by the proponent of the evidence to be the author of the writing." (Italics added.) Hammer points out it verified the address, telephone number and Social Security number on the credit application belonged to Arcaro. However, the fact the

reasonably warranting an inference there is such evidence." (*Puryear v. Golden Bear Ins. Co.*, *supra*, 66 Cal.App.4th at p. 1195.) While this is a correct statement of the law, Hammer fails to identify what evidence it possessed which reasonably would have warranted it to infer evidence of the genuineness of Arcaro's signature existed. Hammer suggests Arcaro and his attorney conspired to present false exemplars of Arcaro's signature in an attempt to convince Hammer to drop its case and this conspiracy would have been exposed in pretrial discovery or at trial. Hammer also speculates that even if Arcaro did write the signatures on the exemplar he may have attempted to alter his signature and this chicanery too would have been exposed at trial. (*Ibid.*) However, Hammer had no information warranting an inference the signatures on the exemplars were fake, much less that Arcaro's attorney had connived with his client to present this false information. Its hope for a Perry Mason-style denouement at trial was pure fantasy.

Hammer also contends Arcaro could have put the matter to rest if he had simply provided it with a signature exemplar predating the credit application. Arcaro might have done so if Hammer initially had treated his forgery claim seriously instead of telling him "We don't care. When are you going to pay up?" Hammer's attorney did request such an exemplar but not until the case was well into the litigation phase and the damage to Arcaro already done. We also note it was not Arcaro's obligation to prove he didn't owe the debt and, given Hammer's attitude throughout these proceedings, it is doubtful this collection agency would have believed *any* evidence Arcaro submitted.

Next, Hammer maintains under the opinion in *Sheldon Appel* it cannot be held liable for failure to investigate the facts regarding the genuineness of Arcaro's signature. Hammer misreads that opinion. It is true the Supreme Court criticized cases which it characterized as basing liability on an attorney's failure "to perform reasonable legal research or factual investigation before filing a claim on his client's behalf" (47 Cal.3d at p. 882), but surely the court was not suggesting a party may bring a claim without the fundamental evidence necessary to support it—a mere "shot in the dark." We are not talking here about a duty to investigate an affirmative defense and, as we explained above, in most cases Hammer would have been entitled to assume the signature on the credit application was genuine. But, when a party is put on notice a fundamental element of its case is disputed, it should not proceed

application contains personal information about Arcaro is not evidence Arcaro actually signed the application. Furthermore, it is unfortunate but true that personal information such as a person's address, telephone number and Social Security number is *likely* to be known to a great many persons other than the person claimed to have signed the credit application.

without evidence sufficient to support a favorable judgment on that element or at least information affording an inference such evidence can be obtained.

In the present case, Hammer lacked probable cause to sue Arcaro on the guarantee because it had no objective, reasonable basis in the facts known to it for a belief Arcaro's purported signature was genuine.

Finally, there is no merit to Hammer's claim it had probable cause to sue Arcaro on the theory he was a partner in Mark Thomas Construction. Hammer had no evidence to support a reasonable belief Mark Thomas Construction was a partnership. Nor did it have any evidence Arcaro was a partner other than Etchegoyen's reference to Arcaro as his "partner." Indeed, Arcaro was not sued as a partner but as "guarantor of Mark Thomas Construction."

For all the reasons set forth above we conclude Hammer lacked probable cause for the underlying action against Arcaro.

### DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Neal, J., concurred.

A petition for a rehearing was denied January 19, 2000, and appellant's petition for review by the Supreme Court was denied March 29, 2000.