[No. G028285. Fourth Dist., Div. Three. Oct. 3, 2002.]

JEFFREY E. MORRISON et al., Plaintiffs and Appellants, v. GEORGE C. RUDOLPH et al., Defendants and Respondents.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 978, this opinion is certified for publication with the exception of part III.

## COUNSEL

John K. Saur for Plaintiffs and Appellants.

Sedgwick, Detert, Moran & Arnold, Randall A. Miller and Douglas J. Collodel for Defendants and Respondents George C. Rudolph and the Rudolph Law Group.

Haight, Brown & Bonesteel, Roy G. Weatherup, Bruce Cleeland, Jon M. Kasimov and J. Alan Warfield for Defendant and Respondent Haight, Brown & Bonesteel.

## OPINION

**ARONSON, J.**—Jeffrey E. and Marta Morrison contend the trial court erred by granting summary judgment against them on their malicious prosecution claim. The court ruled the underlying suit by a buyer—for damages allegedly stemming from construction defects the Morrisons failed to disclose when selling their condominium—was not so untenable that no reasonable attorney would pursue it. We affirm. In the published portion of the opinion, we hold an attorney evaluating whether to initate legal proceedings may generally rely on information provided by the client. In the unpublished portion of the opinion, we decline Haight, Brown & Bonesteel's request that we sanction the Morrisons and their attorney for bringing a frivolous appeal.

I

Cynthia Ping bought the Morrisons' three-bedroom condominium in October 1991 for $168,561.46. She soon noticed several leaks in the roof. She also noticed an electrical outlet in the kitchen did not work during and shortly after rainstorms. Ping learned the homeowners association was initiating a lawsuit against the builder for pervasive construction defects. Her own problems worsened. She paid for repairs twice on a heating and air-conditioning unit that was the wrong size and type for her property. Rain and insects began to infiltrate her home through cracks and faulty seals. Mold grew along the living room baseboards. Ping occasionally lost power in both the powder room outlet and in the master bathroom, in addition to the kitchen outlet. The windows and front door leaked increasingly during rainstorms, soaking a corner of her living room carpet at least once. When it was not raining, dirt blew through cracks in the doors and windows.

Ping wanted to sell the condominium but knew she would have to disclose its substantial defects. She claimed neither the Morrisons nor the homeowners association alerted her to the defects before her own purchase. After her

purchase, the homeowners association *did* tell her that no repairs would be made until litigation with the builder was completed. Ping hoped to pay for repairs herself with cash from refinancing the condo, but the bank denied her application. In Ping's words, "The prospective lenders advised me that the value of the property had decreased so drastically (approximately $20,000), due to the defect litigation and the numerous defects that no refinancing could be accomplished." The bank also refused to temporarily restructure Ping's loan until completion of the construction defect suit against the builder. Ping claimed she was "unable to make the payments on the loan, while at the same time . . . making the necessary repairs to the property to make it habitable." She allowed the bank to foreclose on the condominium in January 1996. It eventually resold in foreclosure for $110,000, which was approximately $30,000 less than the outstanding balance on Ping's loan.

The homeowners association sued Ping for unpaid assessments. In turn, Ping cross-complained against the association and the Morrisons for fraud and negligent misrepresentation regarding the defects in the condominium. The Morrisons moved for summary judgment. At the hearing, the court indicated it was inclined to rule against Ping on grounds that "the loss of the unit was because of her failure to have made the specific payments and her various other failures to present evidence to the contrary, so she has not met her burden which has been reversed back to her under section 437c, subparagraph (o)(2)." The court noted, "We don't have any statements as to what it would have been to fix the various problems. We don't have any refinancing information presented as to her ability or lack thereof to have refinanced under whatever market circumstance. We do not have any evidence that the market value of the premises declined because of these perceived defects." "Tentatively," the judge said, "I would grant the motion . . . . It seems to me that the cross-defendants have shown by their evidence presented that the cause of action has no merit as to causation . . . ."

Ping's attorney insisted: "There is nothing indicated in the record that this lady had any problem making ends meet with her mortgage, her car, whatever other expenses came due. [¶] What the record does show is that she could not pay monies for repair in addition to paying the mortgage. She wrote to the bank. She told them the problems. She alerted them to the repairs that were necessary and for that reason asked for the mortgage to be in some way restructured. [That w]asn't done. She made the determination, based upon valuation that she just couldn't stay there. That all is a result of the Morrisons' suppression of facts because had they not suppressed the facts up front, she would never have bought this condominium to begin with. She would not have taken all of her life savings from 15 years of work and put it into this condo. She would have looked for a different property. That

is the kind of proximate cause, I would submit to the court, as being what is necessary to establish the claim."

The court, however, responded: "Mr. Rudolph, it simply takes more than that, and I suppose I could come up with some form of hypothetical, 'Gee, the value of my property decreased because the tree that was planted in front of my bay window by my neighbors destroyed my ocean view and my property, therefore, [its] value was reduced and, okay, I asked them to trim the tree but they wouldn't, therefore I moved out of my house because the property value was less and my bank wouldn't refinance.' It is kind of similar to that. [¶] We are talking about speculation and, by the way, in my hypothetical, property values generally were decreasing anyway and she just has not met her burden to come forward with any specificity which I can hang my hat on to offset the state of the record." The court granted summary judgment against Ping.

Ping moved for a new trial, having finally secured: (1) an architect's declaration that the property had substantial structural defects; (2) an appraiser's declaration that the majority of the decline in the condo's value was due to these defects and the litigation against the developer; and (3) a declaration from the woman who bought the condo at foreclosure, stating that "unevenness and tilting in the upstairs floor has become so extreme that my entire family has taken to sleeping in the living room, located on the first floor of the unit. We are simply too frightened to sleep upstairs." The trial court evidently denied the motion for new trial. Ping appealed, but without explanation she dismissed her appeal before oral argument.[1]

Remittitur issued, and the Morrisons subsequently filed the present malicious prosecution action against Ping's attorneys, George C. Rudolph and Haight, Brown & Bonesteel (HB&B). The Morrisons did not sue Ping. Rudolph and HB&B moved for summary judgment, which the trial court granted. The court held the Morrisons could not meet their burden of showing Ping's underlying cross-complaint was "so totally and completely without merit that no reasonable attorney would find the claim tenable." In granting summary judgment, the court also sustained objections by Rudolph and HB&B to a declaration filed by Edmund J. Bradley, the attorney who had opposed Ping's cross-complaint on behalf of the Morrisons. The Morrisons now appeal both the exclusion of the declaration and the grant of summary judgment.

---

[1] We grant Haight, Brown, and Bonesteel's request that we take judicial notice of our own and the trial court's dockets. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

## II

### PROBABLE CAUSE

The trial court properly granted summary judgment. ▮ Among other requirements, a plaintiff suing for malicious prosecution must show the underlying suit was brought without probable cause. (*Brennan v. Tremco Inc.* (2001) 25 Cal.4th 310, 313 [105 Cal.Rptr.2d 790, 20 P.3d 1086] [defendant's malice and legal termination of first action in plaintiff's favor also necessary].) Whether probable cause existed for the prior action is a question of law. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 875 [254 Cal.Rptr. 336, 765 P.2d 498] (*Sheldon*).) The trial court resolves this question in the first instance by making an "objective determination of the 'reasonableness' of the defendant's conduct," determining "whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable." (*Id.* at p. 878.)

Tenability consists of an entwined legal and factual analysis. "[F]rom the legal perspective," an action is tenable "if it is supported by existing authority or the reasonable extension of that authority." (*Arcaro v. Silva & Silva Enterprises Corp.* (1999) 77 Cal.App.4th 152, 156 [91 Cal.Rptr.2d 433].) "[F]rom the factual perspective . . . , '[P]robable cause requires evidence sufficient to prevail in the action or at least information reasonably warranting an inference there is such evidence.' To put it another way, probable cause is lacking 'when a prospective plaintiff and counsel do not have evidence sufficient to uphold a favorable judgment or information affording an inference that such evidence can be obtained for trial.' " (*Id.* at pp. 156-157, citation omitted.)

The "standard for determining the probable cause element is objective, not subjective." (*Swat-Fame Inc. v. Goldstein* (2002) 101 Cal.App.4th 613, 624 [124 Cal.Rptr.2d 556] (*Swat-Fame*).) " ' "What facts and circumstances amount to probable cause is a pure question of law. Whether they exist or not in any particular case is a pure question of fact. . . ." ' [Citations.]" (*Sheldon, supra,* 47 Cal.3d at p. 877.) To be sure, "[e]videntiary disputes and factual questions may require resolution before the trial court applies the objective standard to the issue of probable cause." (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 165 [80 Cal.Rptr.2d 66].) But "[i]f undisputed facts in the record do establish an objectively reasonable basis for bringing the underlying action, the existence of other, allegedly disputed facts is immaterial." (*Id.* at p. 167.) In such cases, summary judgment is proper and should be granted. (*Ibid.*)

▮ Notably, when evaluating a client's case and making an initial assessment of tenability, the attorney is entitled to rely on information

provided by the client. (See *Swat-Fame, supra,* 101 Cal.App.4th at p. 629 ["based on the information available to them, the lawyers had probable cause at the time they *initiated* the underlying action"].) An exception to this rule exists where the attorney is on notice of specific factual mistakes in the client's version of events. (*Id.* at pp. 626-627.) Absent such notice, an attorney "may, without being guilty of malicious prosecution, vigorously pursue litigation in which he is unsure of whether his client or the client's adversary is truthful, so long as that issue is genuinely in doubt." (*Tool Research & Engineering Corp. v. Henigson* (1975) 46 Cal.App.3d 675, 684 [120 Cal.Rptr. 291], disapproved on another ground in *Sheldon, supra,* 47 Cal.3d at pp. 882-883.) A respected authority has summed up the issue as follows: "Usually, the client imparts information upon which the attorney relies in determining whether probable cause exists for initiating a proceeding. The rule is that the attorney may rely on those statements as a basis for exercising judgment and providing advice, unless the client's representations are known to be false." (1 Mallen & Smith, Legal Malpractice (5th ed. 2000) § 6.19, p. 620.)

Here, Ping told her lawyer she could not afford to pay both her mortgage and the repairs necessary to stay in her home; that she was thus forced to choose foreclosure; and that if the Morrisons had disclosed the defects, she would never have bought the condo. Ping also alleged the Morrisons knew of the defects and intentionally failed to disclose them. From a legal perspective, Ping's action was tenable as a routine claim of misrepresentation in the sale of real estate: the seller lied, the buyer relied, and but for the lie, the buyer would not have suffered damage (in this case foreclosure). The fact that Ping no longer owned the condo when she cross-claimed against the Morrisons is a wrinkle in the typical suit by a buyer. Yet it falls well within the law's allowance for argument to extend existing authority to novel circumstances. We do not view Ping's foreclosure-due-to-defects claim as a stretch of precedent, but even if it were, our Supreme Court has said that " '[c]ounsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win . . . .' " (*Sheldon, supra,* 47 Cal.3d at p. 885.) As to factual tenability, Ping's account of misrepresentation, reliance, and ensuing damages is, if believed, " 'evidence sufficient to prevail in the action or at least information reasonably warranting an inference there is such evidence.' " (*Arcaro v. Silva & Silva Enterprises Corp., supra,* 77 Cal.App.4th at p. 156.) The Morrisons suggest no reason Rudolph should not have believed his client.

Rather, the Morrisons observe that because the court in the underlying action granted summary judgment against Ping on causation grounds, the

court necessarily found Ping failed to present a triable issue of fact regarding causation. Hence, they suggest "a question of fact in *this* case" arises "as to whether or not Mr. Rudolph possessed knowledge of any facts indicating a causal link when he initiated (or maintained) the underlying Ping Action." But the Morrisons do not contend Ping lied when she said she chose foreclosure or when she claimed she would not have bought the condo if she had known of its defects. Even if she had lied, the Morrisons would have a malicious prosecution claim only against Ping, not her attorneys. (*Swat-Fame, supra,* 101 Cal.App.4th at pp. 629-631.) As we have indicated above, since Rudolph had no reason to discredit Ping's story of but-for causation, that theory was sufficient to give a reasonable attorney probable cause to seek redress by instituting a lawsuit. And "[t]he longstanding rule in California is that, if probable cause exists at the outset of the action, the party acting with probable cause is insulated from liability for malicious prosecution." (*Id.* at p. 628.) Thus, the trial court in the present case properly granted summary judgment to Rudolph and HB&B.

■ The Morrisons' attack on the exclusion of their attorney's declaration is also without merit. We have reviewed the declaration and nothing in it created a triable issue of fact as to Rudolph's probable cause to pursue litigation. Among other "facts," the declaration asserted "discovery disclosed that the payments on Ms. Ping's loan had become too great for her to manage and she could not sell or refinance because of a 20% decline in the relevant real estate market." This is manifestly Bradley's partisan view of the case and, more importantly, does not speak to what Rudolph knew at the time he filed Ping's lawsuit.

The relevant question is whether, "based on the information available to [him], the lawyer[] had probable cause at the time [he] *initiated* the underlying action." (*Swat-Fame, supra,* 101 Cal.App.4th at p. 629.) Bradley's declaration did not identify *any* fact, let alone a fact known before discovery, that might have put Rudolph "on notice the claim was not tenable and should [be] investigated further *before* filing suit." (*Id.* at p. 626, italics added; see also 1 Mallen & Smith, *supra,* Legal Malpractice, § 6.20, p. 622 ["measure of probable cause is based on what a lawyer knew, not what could be learned"].) In addition to its lack of relevance, the declaration was also speculative, conclusory, and inadmissible opinion, and the trial court properly excluded it on those grounds. (Evid. Code, § 352; see also *Sheldon, supra,* 47 Cal.3d at p. 884 [no attorney may give opinion as to probable cause].) As in *Swat-Fame,* we "decline to hold" that a lawyer's "boilerplate denial" of the other side's version of events "can be said to have put [Rudolph] on notice of any specific fatal flaw in [Ping's] claim, and thereby negate[d] probable cause for filing the fraud action." (*Swat-Fame, supra,* 101 Cal.App. 4th at p. 627.) There was no error in excluding the declaration.

## III

## SANCTIONS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed. Respondents are entitled to their costs. (Cal. Rules of Court, rule 26.)

Moore, J., Acting P. J., and Fybel, J., concurred.

On November 4, 2002, the opinion was modified to read as printed above.

---

*See footnote, *ante*, page 506.