Filed 8/29/19; Certified for Publication 9/25/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CINTHYA OLIVARES et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>ROLANDO PINEDA et al.,<br><br>    Defendants and Appellants. | A154205<br><br>(Contra Costa County<br>Super. Ct. No. CIVMSC 17-02059) |

Eric Meyers and Westpro Realty, Inc. (the attorney defendants) appeal from an order denying their special motion to strike under the anti-SLAPP law.  (Code Civ. Proc., § 425.16.)[1]  They contend the claims asserted against them for wrongful eviction, misuse of a security deposit (Civ. Code, § 1950.5, subd. (b)(1)), breach of the covenant of quiet enjoyment, and malicious prosecution all arose out of protected activity because they were based on acts relating to the prosecution of an unlawful detainer action.  The attorney defendants further contend the plaintiffs failed to demonstrate a probability of prevailing on the merits on any of these claims.

We conclude the trial court properly denied the motion.  The attorney defendants did not satisfy the first prong of the anti-SLAPP statute for the claim under Civil Code section 1950.5, subdivision (b)(1), because the allegation that they misused plaintiffs' security deposit did not arise out of protected activity.  Additionally, the plaintiffs

---

[1]    All further statutory references are to this code unless otherwise indicated.

1

satisfied their burden on the second prong of the anti-SLAPP statute by showing minimal merit on their remaining claims.  Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

We take the following facts from the operative first amended complaint and the parties' evidence on the anti-SLAPP motion.

In December 2015, Cinthya Olivares, Martin Rizo, and Allen, Jonathan and Fabian Sanchez (collectively plaintiffs) entered into an oral agreement with Rolando Pineda to lease a home that he owned.  The tenancy was month-to-month, and the monthly rent was $2,000.  At the start of the tenancy, plaintiffs paid Pineda a $2,000 security deposit.

A.  The Unlawful Detainer Action

The following events all occurred in 2017.  In July, Pineda retained the attorney defendants to begin eviction proceedings against plaintiffs.  On July 24, plaintiffs were served with a three-day notice to pay rent or quit, claiming $2,750 in rent was due ($750 for June 2017 and $2,000 for July 2017), and threatening legal action if plaintiffs did not timely pay or give up possession of the premises (the July notice).  According to plaintiffs, however, there was no rent past due, as Pineda had overcharged them $3,350 during their tenancy.  Nevertheless, in order to avoid eviction, Olivares tendered a cashier's check on July 27, in the amount of $2,000, but the tender was rejected as insufficient.

On July 28, Pineda and the attorney defendants (collectively, defendants) filed an unlawful detainer action against Olivares.  During the course of discovery, Pineda produced a rent ledger showing that as of July 1, the amount of rent past due was actually $1,750, not $2,750.[2]  The rent ledger also showed that on July 1, plaintiffs' $2,000 security deposit had been applied to their payment of rent without their knowledge or consent.

_____

[2]     Pineda testified that the rent ledger was created during the unlawful detainer litigation by him and the attorney defendants.

2

During his deposition in August, Pineda authenticated the rent ledger and testified that every entry was true and correct. Plaintiffs' counsel, Nick Reckas, then introduced into evidence five checks totaling $6,800 that appeared to have been excluded from the rent ledger. Pineda acknowledged that the five payments had been deposited to his bank account.

Pineda was also questioned about his efforts to sell the leased premises. He testified that he put the property up for sale in June or July and entered into a written contract with a third party who wanted the building to be delivered vacant. The contract was eventually cancelled, however, because the buyer "wanted a date when the eviction was going to be over for vacating the house," but Pineda "couldn't give them that date."

Defendants continued to prosecute the unlawful detainer for approximately two more months until October 2, when they voluntarily dismissed the action without prejudice. That same day, defendants served plaintiffs with a new three-day notice demanding $9,250[3] in unpaid rent and threatening legal action if plaintiffs did not timely pay or quit possession (the October notice). The October notice attached a revised rent ledger and copies of checks for the payments that had been made.

On October 5, Reckas wrote to Meyers and offered to "accept service of the summons and complaint" on his clients' behalf. Meyers responded the next day, saying "No suit has yet been filed," and asking if plaintiffs disputed the revised amount demanded in the October notice. Meyers requested that Reckas send "any additional payments they have made and we can adjust the balance and perhaps settle this amicably, without the need to evict your clients."

**B. Plaintiffs' Action**

On October 25, plaintiffs filed the instant action against defendants. Reckas then wrote to Meyers and asked if he would accept service of the complaint on Pineda's behalf even though Reckas assumed Meyers would not be representing Pineda because of "the inherent conflict of interest" due to the attorney defendants' inclusion in the action. In

---

[3] According to the October notice, $3,250 was due for the period of June 18 to July 17, and $2,000 was due for each of three month-long rental periods thereafter.

3

response, Meyers wrote, "I was waiting for a response to my last email to you of Oct. 6, concerning the latest 3 day notice and payment ledger, hoping to agree upon the amount of back rent your clients owe. . . . [¶] . . . [¶] Again we ask that you negotiate or mediate the rent owing and pay my client, then dismiss your action. If you persist in suing us, you will create a conflict of interest between my client and myself/firm as you point out." A few days later, Meyers wrote to Reckas again, making further factual and legal contentions and stating, "If I do not hear from you by 12:00 noon, tomorrow 11/13/2017, we will assume that you do not wish to reasonably settle these matters now, and shall proceed accordingly."

The matter did not settle. Nor did defendants file an unlawful detainer based on the October notice.

In late December, plaintiffs filed the operative first amended complaint, which asserts six causes of action, four of which are at issue here and described below.

In the first cause of action for wrongful eviction, plaintiffs allege that defendants violated a city rent ordinance by serving the October notice and demanding rent in excess of the maximum amount allowable. Plaintiffs allege the notice was designed to trick them into either paying an excessive amount of rent or vacating the premises, and there was "no good faith contemplation of litigation, and, in fact, Defendants never filed an unlawful detainer based upon the October 2 Notice prior to it being superseded" by a subsequent three-day notice.

In the fourth cause of action for violation of Civil Code section 1950.5, subdivision (b)(1),[4] plaintiffs allege that "defendants" violated this statute by applying plaintiffs' security deposit towards the payment of rent when they were not actually in default on rent payments.

---

[4]     This statute defines a "security" as any payment, fee, deposit or charge imposed at the beginning of the tenancy to be used for any purpose, including "[t]he compensation of a landlord for a tenant's default in the payment of rent." (Civ. Code, § 1950.5, subd. (b)(1).)

4

In the fifth cause of action for breach of the covenant of quiet enjoyment, plaintiffs incorporate the prior paragraphs of the first amended complaint and allege that "[b]y the acts and omissions described above," defendants deprived them of the full and beneficial use of the leased premises and disturbed their peaceful possession.

Finally, in the sixth cause of action for malicious prosecution, plaintiffs allege that defendants, maliciously and without probable cause, filed and continued to prosecute the unlawful detainer action even though they knew that no rent was past due, and that plaintiffs had been overcharged $3,350 during their tenancy. Plaintiffs allege the unlawful detainer action terminated in their favor, as defendants voluntarily dismissed it without prejudice and without payment of any consideration because they knew they could not prevail.

## C. The Anti-SLAPP Motion

The attorney defendants filed a special motion to strike these claims, in which defendant Pineda joined. They argued the claims arose from protected activity because they were based on the July 28 unlawful detainer action and were requisite precursors to it. They further argued plaintiffs could not demonstrate a probability of prevailing on the merits.

As to the claim for malicious prosecution, defendants argued the voluntary dismissal of the unlawful detainer was not a termination on the merits in plaintiffs' favor. To the contrary, they say, after additional records were obtained from plaintiffs and from Pineda's bank, Pineda realized that he had *understated* the amount of rent owed in the July notice, which is not fatal to an eviction action. Thus, Pineda elected to dismiss the action and, on the same day, served plaintiffs with the updated October notice and revised ledger showing $3,250 owing as of July 1, 2017 (and $9,250 overall). The attorney defendants argued they had probable cause to file and continue prosecuting the unlawful detainer because they were entitled to rely on the information provided by their client, who executed the three-day notices under penalty of perjury, and probable cause was also shown when Olivares tendered a partial rent payment within the July notice period. In his supporting declaration, Meyers stated that all relevant times, he believed Pineda's

5

unlawful detainer claim was factually and legally tenable, and he never had any malicious intent or ill will towards the plaintiffs.

The remaining claims, defendants argued, were barred as a matter of law by the litigation privilege.

Plaintiffs' opposition argued the anti-SLAPP motion should be denied as to the fourth cause of action under Civil Code section 1950.5, subdivision (b)(1), because the claim arose out of defendants' misuse of plaintiffs' $2,000 security deposit, which was not protected activity. As to the remaining claims for wrongful eviction, breach of the covenant of quiet enjoyment, and malicious prosecution, plaintiffs argued there was sufficient merit to withstand the anti-SLAPP motion.

After a hearing, the trial court denied the motion in its entirety. The court found that the fourth cause of action under Civil Code section 1950.5, subdivision (b)(1), did not arise out of protected activity, and that plaintiffs showed a probability of prevailing on their remaining claims.

The attorney defendants appealed. (§ 904.1, subd. (a)(13).)

## DISCUSSION

The anti-SLAPP statute authorizes a special motion to strike claims arising from any act "in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) Such acts include "any written or oral statement or writing" made before a "judicial proceeding." (*Id*., subd. (e).)

Resolution of an anti-SLAPP motion involves two steps. First, the defendant must identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061.) To determine whether a claim arises from protected activity, courts must consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability, and then evaluate whether the defendant has shown any of these actions fall within the categories of acts protected by the anti-SLAPP statute. (*Park*, at p. 1063.) If

6

the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*).) We review the trial court's decision to deny an anti-SLAPP motion de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325–326.)

### A. First Prong – Arises Out of Protected Activity

The critical consideration on the first prong is whether the cause of action is based on the defendant's protected free speech or petitioning activity. (*Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1477–1478 (*Feldman*).) "Our focus is on the principal thrust or gravamen of the causes of action, i.e., the allegedly wrongful and injury-producing conduct that provides the foundation for the claims." (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 490–491.) "Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral*, *supra*, 1 Cal.5th at p. 394.)

Plaintiffs do not dispute that the claims for wrongful eviction, malicious prosecution, and breach of the covenant of quiet enjoyment arise out of protected activity. (See *Feldman*, *supra*, 160 Cal.App.4th at pp. 1479–1480 [prosecution of unlawful detainer action "indisputably" protected activity under anti-SLAPP law]; *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 [communications preparatory to or in anticipation of action are protected activities under anti-SLAPP law].)

The debate here centers on the attorney defendants' argument that the fourth cause of action under Civil Code section 1950.5, subdivision (b)(1), also arises out of protected activity because it expressly incorporates the prior allegations of protected activity (i.e., service of the three-day notices and prosecution of the unlawful detainer). The attorney defendants deduce that the fourth cause of action could only arise out of their activities as litigation counsel, inasmuch as Meyers established in his supporting declaration that he had no involvement in Pineda's handling of plaintiffs' security deposit.

We conclude the fourth cause of action does not arise out of protected activity on the part of the attorney defendants. The principal thrust of this claim is the application of

7

plaintiffs' security deposit towards the payment of rent when they were not in default. Misuse of a security deposit is not an act in furtherance of the attorney defendants' rights of free speech or petition, nor is it a *communication* preparatory to or in anticipation of litigation. Although the fourth cause of action incorporates all prior paragraphs of the first amended complaint, the incorporated allegations of protected activity merely provide context and are not the basis for plaintiffs' claim for recovery under Civil Code section 1950.5. Thus, such allegations do not support striking the fourth cause of action. (*Baral*, *supra*, 1 Cal.5th at p. 394.)

We reject the attorney defendants' contention that this cause of action could only have been based on their litigation activities, as they overlook the allegation that "defendants," collectively, misapplied the security deposit. Although plaintiffs submitted no evidence disputing Meyers's sworn statement that he had no involvement in the handling of plaintiffs' security deposit, plaintiffs were under no obligation to demonstrate a probability of prevailing on the merits of this claim because the attorney defendants did not carry their initial burden to show the claim arose out of protected activity. (*Baral*, *supra*, 1 Cal.5th at p. 396.) We conclude the trial court properly denied the motion as to the fourth cause of action on the first prong of the anti-SLAPP analysis.

**B. Second Prong – Probability of Prevailing**

Because it is undisputed that the remaining claims for wrongful eviction, breach of the covenant of quiet enjoyment,[5] and malicious prosecution arose out of protected activity, the burden shifted to plaintiffs to show a probability of prevailing on these claims. To satisfy their burden, plaintiffs had to demonstrate the challenged claims were

---

[5] In light of our conclusion that the fourth cause of action does not arise out of protected activity, we conclude the fifth cause of action is a so-called "mixed cause of action" because it is based on incorporated allegations that include both unprotected activity (misapplying the security deposit) and protected activity (prosecuting the unlawful detainer). Because the allegations of protected activity do not merely provide context, but also support a claim for recovery for breach of the covenant of quiet enjoyment, this claim arises out of protected activity for purposes of the anti-SLAPP law. (*Baral*, *supra*, 1 Cal.5th at pp. 394–396.)

8

(1) legally sufficient,[6] and (2) supported by a sufficient prima facie showing of facts to sustain a favorable judgment if their evidence is credited. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 (*Wilson*), superseded on other grounds as stated in *Hutton v. Hafif* (2007) 150 Cal.App.4th 527, 547.)

This is a " 'summary-judgment-like procedure.' " (*Baral*, *supra*, 1 Cal.5th at p. 384.) The pleadings and evidentiary submissions of both parties are considered (§ 425.16, subd. (b)(2)), and the evidence favorable to plaintiffs is accepted as true. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291 (*Soukup*).) Plaintiffs need only establish that their claim has " 'minimal merit' " to avoid being stricken as a SLAPP. (*Ibid.*) Although courts may not weigh the credibility or comparative strength of the evidence, the motion is properly granted if the defendant's evidence defeats the plaintiff's attempt to establish evidentiary support for the claim as a matter of law. (*Ibid*.)

### 1. *Malicious Prosecution*

To establish a claim for malicious prosecution, a plaintiff must plead and prove that the prior action: (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in the plaintiff's favor; (2) was brought without probable cause; and (3) was initiated with malice. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965–966 (*Zamos*).)

### a. Favorable Termination

A voluntary dismissal is presumed to be a favorable termination on the merits unless proved otherwise to a jury because the natural assumption is that one does not simply abandon a meritorious action. (*Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1400 (*Sycamore Ridge*).) When termination is other than by a judgment on the merits, the court examines the record to see if the disposition reflects the opinion of the court or the prosecuting party that the action would not succeed, and if there is a dispute as to the circumstances of the termination, the

---

[6]     The attorney defendants did not attack the adequacy of the allegations supporting any of the challenged causes of action.

determination of the reasons underlying the dismissal is a question of fact. ( *Id.* at p. 1399.)

A landlord cannot recover in an unlawful detainer based on a three-day notice that seeks rent in excess of the amount due. (*Levitz Furniture Co. v. Wingtip Communications* (2001) 86 Cal.App.4th 1035, 1038.) In support of their contention that the rent demand in the July notice was excessive, plaintiffs presented a copy of Pineda's initial rent ledger showing that the amount of rent outstanding as of July 1, 2017, was $1,750—$1,000 less than the amount demanded. Plaintiffs also presented evidence that Pineda failed to credit them for five rent payments totaling $6,800, which permits the inference that no rent was due as of July 1. Because the action was voluntarily dismissed after the disclosure of this evidence, plaintiffs made a prima facie showing that the dismissal reflected the attorney defendants' opinion that the unlawful detainer action could not succeed based on the July notice.[7]

In response, the attorney defendants offer the alternative explanation that the case was dismissed so that a more accurate three-day notice demanding additional amounts of unpaid rent could be served. But that explanation merely raises a triable factual dispute as to the true circumstances of the termination and does not defeat plaintiffs' prima facie showing as a matter of law. (*Soukup*, *supra*, 39 Cal.4th at p. 291.)

### b. Lack of Probable Cause

"An action is deemed to have been pursued without probable cause if it was not legally tenable when viewed in an objective manner as of the time the action was initiated or while it was being prosecuted." (*Sycamore Ridge*, *supra*, 157 Cal.App.4th at p. 1402.) "Only those actions that ' "any reasonable attorney would agree [are] totally and

---

[7]    The attorney defendants interpret the first rent ledger as showing $3,750 in unpaid rent. They reach this total by "excluding any possible credit for the $2,000 security deposit," even though the ledger expressly states that the security deposit was applied on July 1. In any event, plaintiffs' evidence that they were not credited for payments totaling $6,800 was sufficient to raise a triable issue that the unlawful detainer could not succeed based on the July notice.

10

completely without merit" ' may form the basis for a malicious prosecution suit." (*Wilson*, *supra*, 28 Cal.4th at p. 817.)

The tort of malicious prosecution includes the continuing prosecution of an action found to lack probable cause. (*Zamos*, *supra*, 32 Cal.4th at p. 973.) While an attorney is entitled to rely on information from his or her client for purposes of assessing a claim's legal tenability, "[a]n exception to this rule exists where the attorney is on notice of specific factual mistakes in the client's version of events." (*Morrison v. Rudolph* (2002) 103 Cal.App.4th 506, 512–513, overruled in part on other grounds in *Zamos*, *supra*, 32 Cal.4th at p. 973.)

Even if we assume the attorney defendants had probable cause to initially file suit in July based on the information provided by their client, as well as Olivares's tender of partial payment within the July notice period, it is undisputed that defendants continued prosecution of the unlawful detainer action until October 2. In this regard, we conclude plaintiffs made a prima facie showing that probable cause was lost when the attorney defendants were made aware, in August, of significant errors in Pineda's rent ledger, including the omission of five payments totaling $6,800. Indeed, Pineda acknowledged at his August deposition that the payments were made to his account. Furthermore, as plaintiffs point out, the revised rent ledger attached to the October notice appears to include these same missing payments, lending credence to plaintiffs' claim that defendants failed to take these payments into account when initially demanding rent in the July notice and pursuing the unlawful detainer action up through October 2.

The attorney defendants argue that, in any event, following Pineda's deposition, they conducted a further investigation and determined from bank and other unspecified records that the total amount of rent owing as of July 1 was actually $3,250. In support, they submit the revised rent ledger and copies of checks for the payments that were made. The attorney defendants contend they had the right to bring an arguably meritorious claim based on this evidence, and probable cause was not lacking simply because plaintiffs had competing evidence. (*Wilson*, *supra*, 28 Cal.4th at p. 822.)

11

Given the record, we cannot conclude that the attorney defendants' evidence defeated plaintiffs' prima showing as a matter of law. (*Soukup*, *supra*, 39 Cal.4th at p. 291.) Plaintiffs raised a triable factual issue that the revised ledger was "manipulated" because it omitted payments that had previously been listed in the first ledger, including a $2,000 payment dated June 8, 2017. Notably, the attorney defendants did not respond to plaintiffs' manipulation argument or attempt to explain the ledger discrepancies.

In sum, the record demonstrates plaintiffs made a prima facie showing that the attorney defendants continued to prosecute the unlawful detainer action even though they knew Pineda's claim was no longer tenable because the demand in the July notice was excessive and did not credit plaintiffs with $6,800 in rent payments. Moreover, the attorney defendants' reliance on the revised ledger did not defeat plaintiffs' showing as a matter of law because plaintiffs raised a triable issue that the revised ledger was manipulated to understate the total amount they paid to Pineda.

### c. Malice

The malice element goes to the defendant's subjective intent in initiating or continuing the prior action. (*Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135, 1156–1157 (*Sierra Club*).) It is not limited to actual hostility or ill will and may be present when proceedings are instituted or maintained primarily for an improper purpose. (*Ibid.*)

Evidence tending to show that an attorney did not subjectively believe the action was tenable is relevant to whether an action was instituted or maintained with malice. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 881.) Here, the evidence of manipulation discussed above permits the inference that the attorney defendants subjectively did not believe the unlawful detainer action was tenable.

Furthermore, plaintiffs raised a triable issue that the action was brought for the improper purpose of depriving them of the beneficial use of the premises even though they were not in default on rent. (*Sierra Club*, *supra*, 72 Cal.App.4th at p. 1157.) Pineda's testimony that he entered into a contract to sell the leased premises to a buyer who wanted the building vacant, combined with his failure to credit plaintiffs for all

12

payments made, could support an improper purpose theory of malice. The attorney defendants argue the theory is meritless because the proposed sale was cancelled and never went forward. But the record does not disclose when the contract was cancelled, and Pineda's testimony that the buyer specifically asked for "a date when the eviction was going to be over" permits the inference that the filing of the unlawful detainer action was directly related to the proposed deal to deliver the building vacant.

For all of these reasons, we conclude plaintiffs showed at least minimal merit on their malicious prosecution claim to withstand the anti-SLAPP motion.

### 2. *Litigation Privilege*

We now turn to the remaining claims for wrongful eviction and breach of the covenant of quiet enjoyment, which the attorney defendants contend are barred by the litigation privilege. The litigation privilege codified in Civil Code section 47, subdivision (b), extends to any communication: (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that has some connection or logical relation to the action. (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.) The litigation privilege is broadly applied (*id.* at p. 211) and applies to all torts other than malicious prosecution (*Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 29 (*Edwards*)).

The challenged claims are based on the October notice. A prelitigation communications such as this is privileged only when it relates to litigation that is contemplated in good faith and under serious consideration. (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1251.) " 'No public policy supports extending a privilege to persons who attempt to profit from hollow threats of litigation.' " (*Ibid.*) Whether a prelitigation communication relates to litigation that is contemplated in good faith and under serious consideration is an issue of fact. (*Ibid.*)

The failure to file a threatened action is one factor supporting a contrary inference of good faith and serious contemplation of future litigation. (*Laffer v. Levinson, Miller, Jacobs & Phillips* (1995) 34 Cal.App.4th 117, 124–125.) Here, no unlawful detainer action was filed pursuant to the October notice. The attorney defendants argue they were

prevented from immediately filing suit because plaintiffs created a conflict of interest between them and Pineda by naming them as codefendants. But a trier of fact could reasonably reject this explanation, as several weeks elapsed between the expiration of the October notice period (October 5) and the filing of the instant action on October 25, during which an unlawful detainer action could have been filed but was not. This contrasts with the events of July, when defendants filed the unlawful detainer complaint the day after the July notice period expired.

Furthermore, a threat to file a lawsuit is insufficient to activate the privilege if it is merely a negotiating tactic and not a serious proposal made in good faith contemplation of going to court. (*Edwards*, *supra*, 53 Cal.App.4th at p. 35.) When a cause of action arises from conduct that is a " 'necessary prerequisite' " to litigation, but that will lead to litigation only if negotiations fail, then future litigation is merely theoretical rather than anticipated and the conduct is therefore not protected prelitigation activity. (*Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 941.) Here, the evidence permits the inference that defendants served the October notice merely as a negotiating tactic. The notice was followed not by litigation, but by several communications in which Meyers attempted to resolve the matter short of litigation. Even when plaintiffs' attorney Reckas responded to the October notice by offering to accept service of the complaint and summons, Meyers did not take Reckas up on his offer but solicited additional evidence of payments to adjust the balance of outstanding rent and "perhaps settle this amicably." Given the already-disclosed evidence suggesting serious recordkeeping errors and failure to credit all of plaintiffs' payments, the attorney defendants' apparent hesitation to sue in October 2017 permits the inference that litigation was not genuinely contemplated at the time.

On this record, plaintiffs sufficiently raised a triable issue of fact as to whether litigation was contemplated in good faith and under serious consideration to withstand the defense of the litigation privilege.

### 3. *Evidentiary Objections*

Finally, the attorney defendants contend the trial court erred in overruling most of their evidentiary objections. However, they make no attempt to explain how the claimed evidentiary errors—most of which pertained to inconsequential statements in the challenged declarations that had no apparent impact on the trial court's ruling—resulted in a miscarriage of justice. (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 446–447; Evid. Code, § 353, subd. (b).)

## DISPOSITION

The order denying the special motion to strike is affirmed. Plaintiffs shall recover their costs on appeal.

_____
Fujisaki, J.


WE CONCUR:


_____
Siggins, P.J.


_____
Petrou, J.


A154205


16

Filed 9/25/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CINTHYA OLIVARES et al.,<br><br>        Plaintiffs and Respondents,<br><br>v.<br><br>ROLANDO PINEDA et al.,<br><br>        Defendants and Appellants. | A154205<br><br>(Contra Costa County<br>Super. Ct. No. CIVMSC 17-02059)<br><br>**ORDER CERTIFYING OPINION<br>FOR PUBLICATION** |

**THE COURT:**

The opinion in the above-entitled matter filed on August 29, 2019, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

Dated: ___09/25/19_____          _____SIGGINS, P.J._____ P.J.

1

Cinthya Olivares et al., Plaintiffs and Respondents v. Rolando Pineda et al., Defendants and Appellants.  (A154205)

Trial court:           Contra Costa County

Trial Judge:           Hon. Charles Treat

Attorneys:             Roeca Haas Montes De Oca, Russell S. Roeca, Kyle Montes de Oca, Audrey S. Tam and Daniel W. Hager for Defendants and Appellants.

                       Law Offices of Nick T. Reckas and Nick T. Reckas for Plaintiffs and Respondents.